Glen P. WILLEY, Plaintiff and Appellee,

v.

Rosalind Ann Johnson WILLEY, Defendant and Appellant.

No. 920091–CA.

Court of Appeals of Utah.

Nov. 29, 1993.

Roger D. Sandack, Salt Lake City, argued, for defendant and appellant.

Ellen Maycock, Salt Lake City, argued, for plaintiff and appellee.

Before BILLINGS, P.J., and BENCH and ORME, JJ.

BILLINGS, Presiding Judge:

Rosalind Willey appeals the trial court's decisions in this divorce action on alimony, division of marital property, and the award of

attorney fees. Because of insufficient findings, we reverse and remand the court's rulings on alimony and the award of attorney fees. We also reverse and remand the property division to give the court the opportunity to reconsider these related financial aspects of the divorce. We otherwise affirm.

## FACTS

Appellant Rosalind Ann Johnson Willey and appellee Glen Paul Willey were married on April 29, 1982. The parties had no children together, and both had been married previously. Mrs. Willey had custody of three children from her former marriage who, at the time of the Willeys' divorce, were twenty, seventeen, and thirteen years old.

During the marriage, Mr. Willey worked as a stockbroker, receiving commissions instead of regular wages. Since 1986, Mr. Willey's annual income ranged from a high of $138,052 in 1987, to a low of $73,096 in 1989. In addition, Mr. Willey earned deferred bonuses in 1987 (approximately $14,200), 1990 (approximately $11,000) and 1991 (projected at $16,219), payable in 1992, 1995 and 1996, respectively, as long as he remained employed by the same firm.

At the time of their marriage, Mrs. Willey was employed full-time in retail clothing sales and earned approximately $10,000 annually. After the marriage, Mrs. Willey worked sporadically part-time. Her income ranged from a high of $6871 in 1985 to nothing in 1989. In 1990, she earned gross wages of $4412, working for five dollars an hour as a part-time salesperson in a bookstore and occasionally leading literary discussion groups formed through the bookstore. Mrs. Willey also received $332 per month in child support from her first husband.

To finance their lifestyle, the parties liquidated assets and incurred debts. Mrs. Willey owned a home at the time of her marriage to Mr. Willey. The parties sold this home in 1983, using the $29,164 in equity to purchase and improve a new home in their joint names. In 1986, the parties sold their joint home and purchased the home in which they lived at the time of their divorce. At the time of trial, they owed $232,000 to Zions Bank on the first mortgage on the marital home. In addition, the parties had consolidated loans from Mrs. Willey's parents into an approximately $80,000 second mortgage on the home.

The parties separated in November of 1990. In February of 1991, they reached a stipulation regarding temporary support. Under the agreement, Mr. Willey made most of the payments on the marital debts, including the $2492 monthly payment to Zions Bank on the first mortgage for their home and an approximately $360 monthly payment against a First Interstate Bank line of credit (the First Interstate debt). He also paid $1500 in monthly support to Mrs. Willey. The monthly payments for the second mortgage were deferred temporarily by agreement. Mrs. Willey remained in possession of the marital home.

After a two-day trial, the trial court entered findings of fact and conclusions of law and a final decree of divorce. We review the court's decision only as it affects the issues on appeal.

The court ordered each party to assume one-half of the approximately $12,000 First Interstate debt. The court denied Mrs. Willey's claim that she should receive $29,164 from the sale of her premarital home as premarital property, finding that these proceeds had lost their separate identity. The court awarded Mrs. Willey $5000 of her documented $19,215 in attorney fees. Furthermore, the court set alimony for Mrs. Willey at $1500 a month for one year to be reduced to $1000 a month for the next three years and then to terminate. Relevant to that award, the court found that Mrs. Willey could earn $1500 to $2000 monthly and that Mr. Willey earned an average of $110,000 annually, or approximately $9000 a month. In addition, the court ordered the marital home to be listed at $350,000 and sold as soon as possible. The court ordered the sale proceeds to be used to retire both mortgages on the home and cover the costs of sale. Any remaining proceeds were to go to Mrs. Willey if the home sold within ninety days after trial. If the home sold after ninety days, the court ordered the parties to divide equally any loss or gain. At oral argument,

the parties agreed the home sold for a loss, resulting in a debt of approximately $37,000.

On appeal, Mrs. Willey argues the court abused its discretion in: (1) setting the alimony award; (2) ordering her to be responsible for one-half of the marital debts; (3) failing to recognize her premarital equity in the marital home; and (4) failing to award her a significant contribution toward her claimed attorney fees of $19,215. In addition, Mrs. Willey requests attorney fees on appeal.

## I. ALIMONY AND PROPERTY DIVISION

Mrs. Willey contends the trial court abused its discretion in setting the alimony award. She claims the court failed to make sufficient findings regarding either party's financial need, ignored both her actual needs and her ability to support herself, and erroneously imputed $1500 to $2000 a month to her as income. Because the trial court failed to make sufficient findings regarding the parties' needs and resources, we reverse and remand for a redetermination of the amount of the alimony award and the entry of findings necessary to support the revised award.

### A. Legal Standard

■ We will not overturn a trial court's alimony ruling as long as the court supports its ruling with adequate findings and exercises its discretion according to the standards we have set. *Bell v. Bell*, 810 P.2d 489, 491 (Utah App.1991). In *Bell*, this court reiterated the well-settled standard for alimony set forth by the Utah Supreme Court in *Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985), which stated:

"[T]he most important function of alimony is to provide support for the [spouse] as nearly as possible at the standard of living she [or he] enjoyed during the marriage, and to prevent the [spouse] from becoming a public charge." *English v. English*, 565 P.2d [409] at 411 [ (Utah 1977) ].... [T]hree factors ... must be considered in fixing a reasonable alimony award:

[1] the financial conditions and needs of the [spouse seeking support];

[2] the ability of the [spouse seeking support] to produce a sufficient income for [himself or] herself; and

[3] the ability of the [payor spouse] to provide support.

*Jones*, 700 P.2d at 1075.

■ "Failure to consider the *Jones* factors in fashioning an alimony award constitutes an abuse of discretion." *Bell*, 810 P.2d at 492 (citations omitted). Thus, "the trial court must make sufficiently detailed findings on each factor to enable a reviewing court to ensure that the trial court's discretionary determination was rationally based upon" the three *Jones* factors. *Id.* (citations omitted). "If sufficient findings are not made, we must reverse unless the record is clear and uncontroverted such as to allow us to apply the *Jones* factors as a matter of law on appeal." *Id.* (citation omitted).

### B. Trial Court Findings

In its findings of fact and conclusions of law on alimony, the trial court stated:

The court finds that a reasonable average income to use for plaintiff in determining alimony to be paid in this matter is $110,000. Because of plaintiff's employment as a stock broker, his income has fluctuated. In 1987 and 1991, plaintiff had unusually good income years. The court further finds that defendant is capable of earning an income of between $1,500 and $2,000 per month, based on her education and qualifications. Accordingly, the court finds that it is equitable that plaintiff pay alimony to defendant of $1,500 per month for one year from the date of trial herein, and $1,000 per month for three years thereafter. The court further finds that plaintiff has been supporting defendant during the parties' separation of approximately one year, and it is appropriate to take that time period into account in determining the term of alimony. Alimony shall terminate at the end of four years from the date of trial, or when defendant remarries, cohabits with a member of the opposite sex, or dies, whichever first occurs.

■ In setting the alimony award, the court made no findings on Mrs. Willey's fi-

nancial need as the first *Jones* factor requires. Nor did it make findings on Mr. Willey's financial need, which underlying factual determination is required for an assessment of the third *Jones* factor, the ability of the payor spouse to provide support.[1]

We have previously reversed an alimony award in a similar case when the trial court failed to address the parties' financial needs. In *Bell v. Bell,* 810 P.2d 489 (Utah App.1991), because the parties "dissipated and lived on credit," the trial court did not give "much weight ... as to what the needs and abilities of the parties might be." *Id.* at 492. Thus, the trial court failed to determine the reasonableness of the expenses each party claimed. This court reasoned that "[w]ithout a finding on reasonable expenses, we are unable to determine the true needs of Wife, or to determine Husband's actual ability to pay and, therefore, to balance Wife's needs against Husband's ability to pay as required in *Jones.*" *Id.* at 493.

We face the identical problem here. At trial, both parties testified about their financial needs. Mr. Willey claimed monthly expenses totalling $3623, including $360 for repayment of the First Interstate debt, but excluding mortgage payments and expenses for the marital home. Mrs. Willey countered that his expenses were approximately $2400 because they should exclude attorney fees, credit card repayments, and the $360 First Interstate debt repayment. On the first day of trial, Mrs. Willey claimed expenses of $6905, including payment of the first mortgage on the marital home. Alternatively, she claimed expenses of $5405, which excluded the mortgage payment but included rent. On the second day of trial, Mrs. Willey presented revised expense figures of $4754 for herself and her children, or alternatively, $2678 for herself alone. The court made no findings on which, if any, of the expenses claimed by the parties were appropriate.

Thus, as in *Bell,* we remand for findings on each party's reasonable needs so we can determine if the court abused its discretion in setting the amount and duration of the alimony award. *See id.* at 493.

Because several issues raised on appeal are relevant to the *Jones* alimony analysis, we reach them to aid the trial court on remand.

### C. Division of Debt as it Affects Alimony Award

■ The trial court made no findings that would enable us to conclude it considered either the impact of its division of the First Interstate debt or the probable result of the sale of the marital home in assessing the parties' respective needs.

Regarding the First Interstate debt, Mrs. Willey argues that distribution of one-half of the debt to her was inequitable, given her resources and the disparity in the parties' income. She argues this is especially true in light of the court's alimony award. She correctly notes that Mr. Willey conceded that she would be incapable of assuming a portion of this debt, and that he agreed to pay the full amount.[2] We vacate the court's allocation of the First Interstate debt to allow the court to reconsider its assignment when establishing the appropriate amount of alimony. If the trial court determines that Mrs. Willey is still obligated to pay a portion of the debt, the court should factor in her share of the debt payment when calculating the alimony award. The court may, of course, reallocate the debt if it deems that appropriate.

In order to effectuate repayment of the two mortgages, the trial court ordered:

The house should be sold as soon as feasible because it constitutes a substantial financial burden on the parties. The house

---

1. The trial court should consider a payor spouse's reasonable needs when determining that spouse's ability to provide support to a former spouse; in short, the payor spouse's reasonable needs are a necessary subsidiary step in determining the ability to provide support. *See Baker v. Baker,* 866 P.2d 540, 547 (Utah App.1993).

2. Arguing Mr. Willey incurred most of the First Interstate debt after separation, Mrs. Willey chal-

lenges the trial court's finding that it was incurred for family expenses. However, Mrs. Willey has failed to marshal the evidence in support of the trial court's finding and then show why this evidence is insufficient to support that finding. *See* Utah R.Civ.P. 52(a). Thus, we accept the court's finding.

should be listed at $350,000 with a new real estate agent to be agreed upon by the parties as soon as the present listing agreement expires. Upon sale of the house, the first mortgage in the approximate amount of $232,000 to Zion's Bank should be paid in full, and the second mortgage in the approximate amount of $80,000 to Beverly Johnson should be paid in full, together with all costs of sale. Any net proceeds of the sale then remaining should be divided as follows:

(a) If the house is sold within 90 days of the date of November 22, 1991, all remaining net proceeds of sale should be awarded to defendant.

(b) If the house is sold after the expiration of 90 days from November 22, 1991, the parties should divide any net proceeds equally.

(c) In the event that the sales price of the house is not sufficient to pay the first and second mortgages and costs of sale, the parties shall be equally responsible for payment of any short fall or deficiency.

■ Although it set a listing price, the court did not include any specific finding regarding the value of the home.[3] At oral argument on appeal, counsel for both parties agreed that the sale incurred a debt of approximately $37,000. Again, we conclude the trial court should consider this debt when it reexamines the alimony award on remand, because this debt has a direct bearing on all three of the *Jones* criteria. *See Burt v. Burt,* 799 P.2d 1166, 1172 (Utah App.1990).[4]

### D. Mrs. Willey's Financial Obligation to Her Children by a Previous Marriage

Mrs. Willey also contends the court misapprehended her financial situation because it refused to consider evidence concerning her obligation to her children in calculating her alimony award. The extent to which an individual's needs and ability to support himself or herself are affected by that person's legal obligation to support children from a prior marriage is an issue Utah's appellate courts have not directly considered.

We note, however, the Utah legislature has imposed a duty of support on stepparents only during the duration of the marriage. Utah law expressly provides that a stepparent's obligation to support a stepchild terminates upon divorce.

A stepparent shall support a stepchild to the same extent that a natural or adoptive parent is required to support a child. Provided, however, that upon the termination of the marriage or common law relationship between the stepparent and the child's natural or adoptive parent the support obligation shall terminate.

Utah Code Ann. § 78–45–4.1 (1992).

■ Mr. Willey's former stepchildren's expenses should not be considered in awarding Mrs. Willey alimony. The children's expenses are properly addressed under the Uniform Civil Liability for Support Act, Utah Code Ann. §§ 78–45–1 through –13 (1992). As calculated from the income of the children's parents (not former stepparents), the guidelines presumptively cover the children's living expenses, including basic needs. *Cf. Christiansen v. Christiansen,* 667 P.2d 592, 593 (Utah 1983).

■ The children's father, Mrs. Willey's previous husband, is paying the support required under the guidelines. If circumstances have changed since the support was calculated, Mrs. Willey can seek modification

---

**3.** The trial court could have taken evidence on and made a specific finding regarding the value of the home. If that valuation was proven incorrect after the sale, either party could have petitioned the court for a modification based on a change of circumstances. Following this procedure would allow the court to make an informed decision based on the best data available.

**4.** As a side argument regarding the debt on the marital home, Mrs. Willey argues that a portion of the money borrowed from her parents, secured by a trust deed against the house, was used for the purchase of the couple's Mercedes Benz. She contends the trial court should therefore have made Mr. Willey individually responsible for the second mortgage. We cannot say the court abused its discretion in dividing this debt. However, on remand, if the court chooses to allocate a portion of this marital debt to Mrs. Willey, that decision must be considered in setting the alimony award.

of the support order. She should not, however, be able to require Mr. Willey to help support the children through an alimony award. *See, e.g., Baker v. Baker,* 866 P.2d at 546 (considering expenses of grandchildren living with spouse receiving alimony "would be tantamount to giving a child support award for the grandchildren"); *see also Needel v. Needel,* 15 Ariz.App. 471, 489 P.2d 729, 732 (1971) (rejecting attempt to introduce testimony about expenses of children from prior marriage); *Brendel v. Brendel,* 566 So.2d 1269, 1273 (Miss.1990) (disallowing portion of alimony that would have gone to expenses of child by former spouse); *Skribner v. Skribner,* 153 N.J.Super. 374, 379 A.2d 1044, 1045 (Ct.Ch.Div.1977) (holding wife "should not be permitted to obtain through the back door what she cannot obtain directly").

### E. Imputation of Income to Mrs. Willey

■ Mrs. Willey contends the court improperly imputed to her a monthly income of $1500 to $2000 in setting her alimony award. She argues that the court's finding is based solely upon speculation. We agree.

At trial, Mr. Willey called Mrs. Willey's current employer, who testified that if Mrs. Willey were employed full-time in the same position, she would make $800 per month gross income, but that no full-time sales or managerial positions were available for Mrs. Willey. Mrs. Willey called the director of human resources from a large Utah company to testify. This expert testified that a forty-two-year-old woman with an outdated bachelor of arts degree, without marketable skills, and who had not been employed full-time for ten years, needed at least three years of education to upgrade her skills, unless she is to be relegated to an unskilled sales or similar position. The trial court rejected this witness's testimony, finding it not credible in light of the witness's prior relationship with Mrs. Willey and the fact that she was planning to charge Mrs. Willey $1100 for her services. Mrs. Willey testified that to earn a teacher's starting salary of $1333 to $1500 a

month,[5] she would need to complete thirty-eight to forty hours of a forty-five hour university program, which could be done in one year only if she attended school full-time. She also testified that a teacher's salary was not enough income for her to live on and thus she hoped to pursue other avenues of employment.

Regarding Mrs. Willey's ability to earn income, the trial court stated:

The court finds that the defendant is capable of earning income substantially in excess of that which is proposed here. Her earnings projection are at the level of $860.00. While there is not testimony of her having actively sought other income she described herself as a hobbyist. The court finds that she has previously worked in sales, in retail sales and clothing, that she works in a bookstore in sales, that she conducts classes ... with interested persons, and those yield greater income. The court believes that it would not be unreasonable to expect that her income could or should be in the range of $1,500 to $2,000 per month based upon her education and her circumstances. I recognize that there may be a little bit of time necessary to get to that level, that starting a job takes a little time at a lower rate, but it should not be below $860.00 and should certainly be within that level within 12 to 24 months.

We cannot say the trial court abused its discretion in setting Mrs. Willey's earnings at $860 per month based on a projection of full-time work at her present salary. *See Thronson v. Thronson,* 810 P.2d 428, 435 (Utah App.), *cert. denied,* 826 P.2d 651 (Utah 1991). However, there is no basis for the trial court's finding that Mrs. Willey could earn $1500 to $2000 per month within a year or two. We have previously held such a finding improper. In *Bell v. Bell,* 810 P.2d 489 (Utah App.1991), the trial court imputed a $1500 income to Mrs. Bell, despite undisputed testimony that she earned $863 per month as a part-time teaching assistant at Utah State University. *Id.* at 492 n. 2. The imputed income was based on the level she had

5. There is no evidence that Mrs. Willey had any foundation on which to base her estimate of a teacher's starting salary.

previously earned as a full-time school teacher in another state, approximately two years before she filed for divorce from her husband of ten years. *Id.* We noted that "[n]o explanation was offered for this unusual [income] adjustment." *Id.*

Mrs. Willey's circumstances are similar to Mrs. Bell's. Like Mrs. Bell, who began working part-time two years prior to filing for divorce, Mrs. Willey worked part-time during her marriage. Both possessed college degrees. However, unlike Mrs. Bell, Mrs. Willey never utilized her twenty-year-old education degree in an employment capacity. In Mrs. Bell's case, the trial court imputed an income she had actually earned on a full-time basis three years before trial. However, for Mrs. Willey, the trial court first imputed an income based on full-time employment at her current wage ($860 per month), and then, without any factual basis, speculated that she could raise her income to $1500 to $2000 per month.

The only evidence presented to suggest that she could earn income greater than $860 per month came from Mrs. Willey herself and from the witness whose testimony the court found not credible. If the trial court relied on Mrs. Willey's testimony, it appears the court failed to take into account her statement that she could earn $1333 to $1500 monthly as a starting teacher only after attending school for one year on a full-time basis, and then only if jobs were available. Furthermore, she had never taught school before, and there was no historical record of other earnings on which to base this finding.

We do not question the trial court's authority to impute income to Mrs. Willey. Imputing income to an unemployed or underemployed spouse when setting an alimony award is conceptually appropriate as part of the determination of that spouse's ability to produce a sufficient income. *See Bell,* 810 P.2d at 491–92. However, it cannot be premised upon mere conjecture; instead, it demands a careful and precise assessment requiring detailed findings. We have examined imputation in other contexts and outlined a detailed approach that, while not expressly applicable to the instant situation, should inform the trial court's assessment upon remand. *See, e.g., Hall v. Hall,* 219 Utah Adv.Rep. 29 (Utah App.1993) (implementing statutory guidelines and articulating necessary findings for imputation of income to parents in determining child support obligations); *State v. Vincent,* 845 P.2d 254 (Utah App.1992) (describing findings underlying assessments of earning capacity and other financial factors in determining indigency for appointment of counsel).

Such findings, however, are notably absent from the record before us. Without them we are unable to see how the trial court's imputed income level follows from or is supported by the evidence. Based on the facts in the record, we conclude that the trial court's jump to the higher salary range was an abuse of discretion. *See Rasband v. Rasband,* 752 P.2d 1331 (Utah App.1988). On remand, the trial court may base its award on Mrs. Willey's $860 per month projected earnings or, should it wish to use an imputed income figure, hold further evidentiary hearings to receive evidence on Mrs. Willey's future earning capacity consistent with the cases cited above.

### F. Rehabilitative Alimony

 It is clear from the structure of the alimony award that it was intended to achieve a rehabilitative purpose. We have no difficulty with a properly fashioned rehabilitative award under the facts of this case. However, to the extent the alimony award is intended to be rehabilitative, its goal is "to close the gap between actual expenses and actual income to enable the receiving spouse to then be better able to support [himself or] herself when the alimony and schooling end." *Bell v. Bell,* 810 P.2d 489, 492–93 n. 3 (Utah App.1991). Thus, the court must make realistic assessments of actual current income and actual expenses. The court must also consider the time demands and expenses of attending school. Absent such an assessment and appropriate findings, there is no basis on which to determine the proper amount and duration of alimony needed to achieve a rehabilitative outcome.

### G. Summary

A thorough review of the record reveals that the court made no findings regarding

either party's reasonable financial needs. The court also failed to adjust either party's financial needs to account for the debt payments each would owe to First Interstate after the court's property distribution. Further, the trial court did not incorporate the contemplated debt arising from the sale of the marital home in the alimony determination. However, the court did not err in excluding evidence of the impact of Mrs. Willey's obligation to support her children from her previous marriage in assessing the appropriate alimony award. Finally, the court imputed income to Mrs. Willey that is unsupported by the record. Given the record before us, we are simply unable to balance Mrs. Willey's need and her ability to support herself against Mr. Willey's ability to pay as required by *Jones;* consequently, we cannot determine whether the trial court abused its discretion in setting the amount and duration of the alimony award. We therefore reverse and remand the alimony award for additional findings on each of the *Jones* factors and a reassessment of the alimony award in light of those findings and our decision.

## II. PREMARITAL EQUITY

▪ Mrs. Willey next contends the trial court abused its discretion by failing to recognize her equity in the marital home derived from proceeds of the sale of her premarital home. Mr. Willey responds that the evidence supports the trial court's finding that Mrs. Willey's premarital equity has lost its separate character as premarital property. We affirm the trial court's ruling on the basis that any premarital equity was consumed during the marriage.

"Generally, the rule for premarital property is that each party retain the separate property he or she brought into the marriage." *Dunn v. Dunn,* 802 P.2d 1314, 1321 (Utah App.1990). However, if the "property has been *consumed* or its identity lost through commingling or exchanges" it no longer falls within the rule. *Mortensen v. Mortensen,* 760 P.2d 304, 308 (Utah 1988) (emphasis added).

Although the trial court found the funds had lost their identity through commingling,

the evidence shows that they were actually consumed, i.e., the equity was used for various expenses during the course of the marriage. Therefore, we affirm the court's rejection of Mrs. Willey's claim on that basis.

## III. ATTORNEY FEES

### A. Fees Through Trial

▪ Mrs. Willey maintains that the trial court abused its discretion in awarding her only $5000 in attorney fees when she submitted evidence supporting her claim for $19,215. A trial court may award attorney fees in divorce proceedings. Utah Code Ann. § 30–3–3 (Supp.1993). "The award must be based on evidence of the financial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees." *Bell v. Bell,* 810 P.2d 489, 493 (Utah App.1991). "The decision to make such an award and the amount thereof rest primarily in the sound discretion of the trial court." *Id.* However, "[t]o permit meaningful review of the trial court's discretionary ruling, '[w]e have consistently encouraged trial courts to make findings to explain the factors which they considered relevant in arriving at an attorney fee award.' " *Id.* at 494 (quoting *Regional Sales Agency, Inc. v. Reichert,* 784 P.2d 1210, 1215 (Utah App. 1989)).

> A court may consider, among other factors, the difficulty of the litigation, the efficiency of the attorneys, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved.

*Id.* 810 P.2d at 493–94.

▪ Mrs. Willey testified that she thought her attorney fees were reasonable. Counsel for Mrs. Willey made a proffer at trial concerning his $19,215 bill for legal services and testified that he had spent 128.1 hours on the case. Counsel's documented time was billed at $150 per hour. Counsel for Mr. Willey challenged the reasonableness of opposing counsel's expenses, activities, and billing rate. However, the trial court did not independently assess either this testimony or

the reasonableness of Mrs. Willey's fees. The court merely noted in its oral ruling that *combined* attorney fees of $31,000 to $32,000 was a "very unfortunate use of funds." While this statement may indicate the trial court believed both parties' fees were unreasonable, it does not constitute a finding addressing the reasonableness of Mrs. Willey's attorney fees according to the *Bell* factors. We, therefore, are unable to determine whether Mrs. Willey met her burden to show the reasonableness of her fees. On this basis alone, remand is appropriate. *See Morgan v. Morgan,* 795 P.2d 684, 688 (Utah App.1990).

Furthermore, the trial court made no findings regarding either Mrs. Willey's ability to pay her own attorney fees or Mr. Willey's ability to pay her fees. Coupled with the court's failure to make findings as to the reasonableness of her fees, we have no explanation why the court awarded Mrs. Willey approximately twenty-five percent of her request.

We therefore reverse the attorney fees award and remand the matter. If the court on remand concludes that attorney fees should be awarded, appropriate findings on the reasonableness of the fees and each party's ability to pay should be included.

### B. Fees for Appeal

Mrs. Willey seeks an award of attorney fees incurred on appeal. "Ordinarily, when fees in a divorce were awarded below to the party who then prevails on appeal, fees will also be awarded to that party on appeal." *Burt v. Burt,* 799 P.2d 1166, 1171 (Utah App.1990). If the trial court again awards Mrs. Willey attorney fees after making the appropriate findings on remand, we award her attorney fees for this appeal in an amount to be determined by the trial court.

### CONCLUSION

Because the trial court failed to make adequate findings of fact, we remand for the entry of appropriate findings, and a reassessment of the awards in light of those findings and our opinion, on (1) the award of alimony, (2) the allocation of debt, and (3) the award of attorney fees at trial and on appeal. We otherwise affirm.

BENCH and ORME, JJ., concur.