Sahndra K. MARSHALL, Plaintiff and Appellee,

v.

Donald R. MARSHALL, Defendant and Appellant.

No. 950172–CA.

Court of Appeals of Utah.

April 11, 1996.

Helen E. Christian, Gustin & Christian, Salt Lake City, for Appellant.

Samuel King and David J. Friel, King, Friel & Colton, Salt Lake City, for Appellee.

Before DAVIS, Associate P.J., and GREENWOOD and JACKSON, JJ.

## OPINION

DAVIS, Associate Presiding Judge:

Donald R. Marshall appeals from a final decree of divorce and related matters. We affirm in part and reverse in part.

## PROCEDURAL BACKGROUND

In June of 1992, plaintiff filed for divorce. An order to show cause was obtained by plaintiff which, in pertinent part, addressed temporary alimony and child support. A hearing was held on the matter September 1, 1992. Defendant did not attend the hearing and, although aware of the hearing date, defendant's counsel was not present because of a scheduling conflict. In defendant's absence, the court entered an order which required that he pay $4122 per month in child support and $3500 per month in alimony.

Defendant objected to this order and requested a rehearing on the issues. The trial court granted defendant's request, and another hearing was held on October 7, 1992. This second hearing resulted in a reduction of the child support to $3000 per month,[1] but the alimony remained at $3500. The support payments were retroactive to August 1992. Both parties were also ordered to refrain from disbursing, disposing of, or encumbering any assets without the consent of the other.

Shortly thereafter, on December 4, 1992, plaintiff obtained an order to show cause regarding defendant's contempt for his failure to pay the full amount of the court-ordered support. Defendant paid plaintiff only $5500 per month, instead of the required $6500. In response, defendant filed a verified motion for relief requesting, among other things, that the alimony be reduced from $3500 to $1500, retroactive to August 1992. A hearing on those matters was held January 26, 1993. On February 1, 1993, the trial court, by memorandum decision, found there was sufficient evidence to sustain the temporary alimony award and also found defendant in contempt for his failure to pay the additional $1000 per month. Defendant subsequently filed a motion for reconsideration or, in the alternative, a motion to set aside the order, arguing the contempt order should be reversed and the amount of alimony reduced. On April 5, 1993, by memorandum decision,[2] the court partially granted defendant's motion and vacated the finding of contempt. However, the court again upheld the alimony amount and awarded judgment to plaintiff in the amount of $6000, reflecting the amount of the support arrearages.

Because there had been allegations of abuse, the issues of child custody and visitation were certified by the district court to the juvenile court on May 19, 1993. The parties subsequently entered into a stipulation re-

garding custody and visitation, which was approved by the juvenile court on November 16, 1993. The custody and visitation order provided, among other things, that plaintiff and defendant were to have joint legal custody of the children. The order also provided that it shall be "incorporated into the terms of the decree of divorce, and shall be binding on the parties to the divorce action as though entered in the District Court, in accordance with *Utah Code Ann.* § 78–3a–17." The case was then sent back to the district court for resolution of the other pending issues.

On March 10, 1994, plaintiff filed a "Motion for Order to Show Cause,"[3] which was based upon several grounds, including defendant's failure to comply with discovery, his failure to pay the additional $1000 per month in support, and his concealment of assets. Plaintiff's memorandum in support of her motion alleged numerous occasions on which defendant had failed to comply with discovery. Plaintiff requested "that defendant be ordered, within 30 days, to completely comply with all discovery requests," that defendant be defaulted, and that he be found in contempt of court for his failure to pay the court-ordered support payments. Defendant responded by denying plaintiff's allegations and requesting immediate relief from the $3500 per month alimony award.[4] After a hearing, the trial court entered an order on May 27, 1994, which provided in part:

6. Both parties are to provide statements of any and all assets sold, transferred, hypothecated or otherwise handled or disposed of from the time the divorce was filed up to the present time. The accounting should be done strictly within the normal accounting procedures, and all foundation and background documents must be

---

1. Defendant had argued, however, that the child support be reduced to $2000.

2. The record does not reflect that a hearing was held on defendant's motion for reconsideration or that an order was prepared and signed subsequent to the memorandum decision.

3. Although plaintiff titles the "motion" an "order to show cause," an order to show cause was never signed by the trial court and it was treated as a motion. This was also the case in subsequent "motions for an order to show cause."

4. Each time defendant requested a reduction in the alimony amount, he claimed he did not have the income to pay the court-ordered amount.

provided to show the amounts of the sale, to whom, the distribution of those funds upon receipt and where they are presently located. No further assets are to be sold or transferred from this point on.

7. Defendant is to submit statements of all accounts in which defendant has an interest. Plaintiff asserts she needs discovery of more accounts than defendant has submitted. . . .

. . . .

9. All financial records from each party are to be submitted to the other by May 20, 1994, which should include credit card records, bank statements, canceled checks, etc.

The court also denied defendant's request to lower the alimony award and granted plaintiff a judgment against defendant in the amount of $21,955 [5] for defendant's support arrearages.

In June of 1994, plaintiff began garnishing defendant's wages in an attempt to collect the judgment. Interrogatories were sent to defendant's employer, Prudential Securities. As a result of Prudential's answers to the interrogatories, plaintiff discovered that although defendant had earlier disclosed that he had a certain "Command Account" with Prudential, he had failed to reveal that he also had three others. Furthermore, while defendant testified at his deposition that he did not have any stocks with Prudential, Prudential's interrogatory answers revealed that he held "five groups of stock having a face value of $58,000."

When plaintiff began garnishing defendant's wages, defendant made a partial payment in July 1994, but then stopped making the monthly $5500 payment.[6] Thus, on August 19, 1994, plaintiff filed yet another motion for an order to show cause, seeking another judgment for the support arrearages and an order of contempt for defendant's failure to comply with the support order, his failure to comply with the May 27, 1994 discovery order, and his intentional withholding of information regarding his accounts with Prudential.

On September 9, 1994, before the August 19 motion for an order to show cause was heard, plaintiff filed a motion for "(1) Default on Defendant and/or (2) Obtaining Legal Fees to Continue Discovery and (3) Contempt." Plaintiff requested that defendant be defaulted for his continued failure to comply with discovery or, in the alternative, an order compelling defendant to pay plaintiff $25,000 so that she could complete discovery. Plaintiff also requested that defendant be found in contempt for defying the orders of the court. In plaintiff's supporting memoranda, thirteen instances of defendant's failure to provide discovery documents were specifically outlined. Plaintiff also illustrated how defendant had failed to comply with the court's discovery orders.

Defendant responded to plaintiff's motions on September 23, 1994. Accompanying defendant's response was "Defendant's Verified Statement in Re: Expenses Paid With Defendant's 1994 Year–To–Date Income." This document revealed that defendant had diverted $95,479.49 of his income in 1992 and $84,077.74 in 1993 without the knowledge of plaintiff or the court. This information suggested that he did have sufficient income to cover the additional $1000 per month he had failed to pay since August 1, 1992.

Plaintiff's August 19 and September 9 motions were heard on September 27, 1994. Plaintiff was present with her counsel and defendant's counsel was present. The court heard arguments of counsel; the record does not reflect the introduction of any evidence.

As a result of the September 27, 1994 hearing, the trial court entered an order on November 1, 1994. This order provided that plaintiff be given a $20,000 judgment for the support delinquencies for April 1994 through September 1994. Paragraph three of the order provided that because plaintiff "needs her delinquencies paid in order to fund nec-

---

5. This amount included the prior $6000 in arrearages which had been reduced to judgment on April 5, 1993 and $955 interest thereon.

6. Defendant's justification for this was that the garnishment was in lieu of support payments.

essary trial preparation, Defendant is ordered to pay his delinquencies in full, $41,-349.71, by November 15, 1994, or he will be defaulted." Defendant objected to the order, arguing it was improper for the court to enter an order forcing defendant to pay support arrearages or his default would be entered. The court overruled defendant's objection.

As a result of defendant's failure to comply with the court's November 1, 1994 order, the court entered an Order of Default on November 30, 1994. The Order of Default provided, in pertinent part:

> In this action the Defendant ... having been served through his counsel ... on September 27, 1994, with the Plaintiff's Proposed Order on Order to Show Cause and on Plaintiff's Motion to Default and Defendant's Counterclaim to Reduce Support, and said Order having been entered by the Court November 1, 1994, ... and having not complied with paragraph 3 of said Order, now therefore pursuant to the terms of that Order, the Default of said Defendant in the premises is hereby duly entered according to law.

Defendant filed a motion to set aside the default on December 6, 1994, arguing the trial court abused its discretion by entering defendant's default for his failure to pay the judgment for his support delinquencies.

Without notice to defendant, an evidentiary hearing was held on December 8, 1994, during which the trial court received evidence in the form of testimony and exhibits on the merits of the divorce.[7] At this time, the trial court signed the proposed findings of fact and conclusions of law, but did not enter them pending a hearing set for January 9, 1995, on defendant's contempt and his motion to set aside the entry of default.

■ Apparently in response to defendant's motion to set aside default, the trial court filed an "Order Clarifying Default" nunc pro tunc[8] on December 19, 1994.[9] This clarifying order stated that defendant's position that the default was entered based on defendant's failure to pay his delinquent support was "inaccurate," and went on to say

> 3. At the hearing September 27, 1994, the Court was persuaded, based on the Pleadings filed by the parties and their in-Court arguments, that Plaintiff was unable to determine the size of the marital estate. This was because it was all in Defendant's control and *he was hiding the assets contrary to the Court's Order he disclose them.* Plaintiff asked that Defendant be defaulted....
>
> ....
>
> 7. The Court finds that Defendant's pattern in ... (2) taking all known assets (a minimum of $552,000.00 at the time of separation, these being solely in liquid assets held at his employer Prudential Securities), and converting them to unknown accounts and *refusing to reveal any of them to Plaintiff or the Court....*
>
> ....
>
> 9. In her Motion for Default, Plaintiff submitted pertinent Rules and Utah case law justifying on the spot default in such situations.[10]

(Emphasis added.)

---

7. Rule 55(a)(2) of the Utah Rules of Civil Procedure provides

> [a]fter entry of the default of any party, ... it shall not be necessary to give such party in default any notice of action taken or to be taken or to serve any notice or paper otherwise required by these rules to be served on a party to the action or proceeding.

8. A nunc pro tunc order is used to "correct the court's omission or error." *In re Estate of Leone,* 860 P.2d 973, 978 (Utah App.1993). However, a nunc pro tunc order may not be used to address an issue not previously before the court. *Id.* In this case, the court utilized the nunc pro tunc

order to correct the court's earlier error in not sufficiently stating the grounds justifying the entry of defendant's default.

9. At the December 8, 1994 hearing, plaintiff suggested the court enter this nunc pro tunc order to clarify the grounds for defendant's default. The trial court agreed and directed plaintiff to prepare the order.

10. Plaintiff's motion for default relied in part on Rule 37(b)(2)(C) of the Utah Rules of Civil Procedure, which in pertinent part provides:

> (2) If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such

On the same day the court entered the clarifying order, the court entered another order captioned "order and notice of hearing" which, in pertinent part, provided:

9. *The Courts [sic] [November 1, 1994] Order to pay delinquencies or be defaulted[ ] did not state the underlying reasons for the Default Order.*

10. To deal with this the Court directed Plaintiff's counsel to submit a Clarifying Order of Default setting forth the Court's reasons. The Order was to include by reference pleadings pending before the Court on September 27, 1994, together with the content of the Findings, Conclusions, and Decree, *these all together stating the reasons underlying Defendant's being in a position to be defaulted.*

(Emphasis added.) The order also provided defendant notice of the hearing to be held on January 9, 1995, which would address defendant's motion to set aside the default and the entry of the findings of fact, conclusions of law, and decree of divorce. Additionally, defendant was ordered to personally appear at the January 9 hearing to address his contempt and the appropriate sanctions.

Although the January 9, 1995 hearing was held as scheduled, defendant failed to appear, citing threats on his life by plaintiff and their son and a new job as reasons justifying his absence. Following the January 9 hearing, the trial court entered the findings of fact, conclusions of law, and decree of divorce from the December 8, 1994 evidentiary proceeding and entered an order on March 6, 1995, titled "Order From Hearing Dated January 9, 1995, Re: Contempt and Other Issues." In the findings of fact supporting the March 6 order, the trial court found, in relevant part, that: (1) defendant's consistent position that he did not have sufficient income to pay the additional $1000 per month was a falsehood; (2) in defiance of the court's discovery order, defendant had steadfastly refused to reveal all of the accounts in which he had an interest; (3) defendant had failed to pay support since July 1, 1994; (4) defendant willfully failed to appear at the January 9, 1994 hearing without good cause; (5) "it is appropriate that Defendant's pleading be stricken if for no other reason than on the basis of his non payment of child support;" and (6) "[t]he Court did expressly give the Defendant the opportunity to provide discovery in an appropriate manner which he failed to do. And as a result of these things the court felt that his default should be entered and pleadings stricken." (Emphasis added.) The court concluded, in relevant part, that (1) a bench warrant should be issued for defendant's arrest and (2) defendant's motion to set aside the default should be denied. Accordingly, based on the findings of fact and conclusions of law, the trial court ordered, in pertinent part, that (1) *"Defendant has not adequately provided discovery pursuant to Court Order and as such it is appropriate that his pleadings be stricken;"* and (2) that a bench warrant be issued for defendant's arrest. (Emphasis added.)

Defendant appeals.

## ISSUES

■ Defendant raises numerous issues on appeal. Defendant first argues the trial court did not have a legal basis to enter a default against him and, therefore, abused its discretion in doing so. Defendant next challenges the alimony award, asserting both that the evidence does not support the alimony awarded to plaintiff and that the trial court failed to make the necessary findings of fact. Defendant also challenges the child support award, claiming the amount awarded is contrary to the Child Support Guidelines. Defendant next alleges the trial court abused its discretion in valuing and dividing the marital estate. Defendant argues the trial court's award of attorney fees to plaintiff should be reversed because the trial court failed to make the required findings. Lastly, defendant claims the trial court erred by not

orders in regard to the failure as are just, and among others the following:

. . . .

(C) an order striking out pleadings or parts thereof, staying further proceedings until the order is obeyed, dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

including the provisions of the juvenile court's order regarding custody and visitation into the divorce decree.[11]

## ANALYSIS

### A. Default

■ Defendant claims the trial court entered his default because he failed to pay his past due temporary support obligations. Although the court's November 1 and November 30 orders support defendant's argument, subsequent orders demonstrate the trial judge defaulted defendant based on his failure to comply with discovery. Furthermore, defendant was put on notice that plaintiff was seeking default as a sanction for defendant's wilful noncompliance with discovery requests. Two of plaintiff's motions, one filed on March 10, 1994, and the other filed on September 9, 1994, requested that defendant be defaulted for his failure to comply with discovery. At the September 27, 1994 hearing, the trial court heard plaintiff's September 9 motion for default from which the order of default arose.

Additionally, at the January 9, 1995 hearing the court stated to the parties that defendant was given numerous opportunities to comply with discovery "which he failed to do." Consequently, the trial court denied defendant's motion to set aside his default and reinstate his pleadings. In the March 6, 1995 order, the trial court again specifically stated, "Defendant has not adequately provided discovery pursuant to Court Order and as such it is appropriate that his pleadings be stricken." Accordingly, it is clear the grounds for entering defendant's default were his failure to comply with discovery, as well as his failure to pay the court-ordered support. Thus, the issue becomes whether, under these circumstances, the trial court abused its discretion by entering the default and striking the pleadings.

■ The trial court has broad discretion to impose discovery sanctions upon a non-

complying party. *Utah Dep't of Transp. v. Osguthorpe,* 892 P.2d 4, 6 (Utah 1995). We will not reverse a trial judge's decision to impose discovery sanctions absent an abuse of that discretion. *Amica Mut. Ins. Co. v. Schettler,* 768 P.2d 950, 961 (Utah App.1989). Discovery sanctions are intended to deter misconduct and require a showing of willfulness, bad faith, or fault. *Osguthorpe,* 892 P.2d at 8.

■ "The striking of pleadings, entering of default, and rendering of judgment against a disobedient party are the most severe of the potential sanctions that can be imposed upon a nonresponding party." *Id.* at 7. Because of the severity of this type of sanction, "the trial court's range of discretion is more narrow than when the court is imposing less severe sanctions." *Id.* at 8.

In the case at bar, defendant secreted approximately $180,000 of his income while insisting to the court that he had insufficient income to pay an additional $1000 per month in support. When defendant finally disclosed what he had done, he explained the absence of these funds by presenting copies of the faces of cashier's checks purportedly sent to the Internal Revenue Service and the State of Arizona for tax liabilities. However, defendant has never presented the statements evidencing payment of these obligations in compliance with the May 27, 1994 discovery order. Defendant also failed to reveal several savings and investment accounts he held with Prudential and failed to comply with the trial court's discovery order by providing documentation of these accounts.

■ "[T]he judicial system is not to be manipulated in divorce proceedings by one who actively and aggressively misleads the court and the opposing party...." *Boyce v. Boyce,* 609 P.2d 928, 931 (Utah 1980). Accordingly, the trial court did not abuse its discretion in entering defendant's default.[12]

---

11. Although the Statement of the Case section of defendant's brief states that the propriety of the bench warrant is also on appeal, it is not mentioned anywhere else in the brief. Thus, because the issue was not briefed, we do not address it. *See State v. Yates,* 834 P.2d 599, 602 (Utah App. 1992).

12. Although the trial court may have erroneously entered defendant's default partially based on his failure to pay support arrearages, we may affirm based on the fact that the default was also sup-

## B. Alimony Award

 Defendant also challenges the alimony award, claiming the trial court failed to enter the required findings. We will not disturb a trial court's alimony award absent a clear and prejudicial abuse of the considerable discretion granted the trial court in determining the award. *Breinholt v. Breinholt,* 905 P.2d 877, 879 (Utah App.1995). It is well grounded in Utah law that the trial court must consider: " '(1) the financial conditions and needs of the receiving spouse; (2) the ability of the receiving spouse to produce a sufficient income; and (3) the ability of the supporting spouse to provide support.' " *Godfrey v. Godfrey,* 854 P.2d 585, 589 (Utah App.1993) (citation omitted). A trial court abuses its discretion when it fails to consider the enumerated factors. *Willey v. Willey,* 866 P.2d 547, 550 (Utah App.1993). "Thus, 'the trial court must make sufficiently detailed findings on each factor to enable a reviewing court to ensure that the trial court's discretionary determination was rationally based upon' " the required factors. *Id.* (citation omitted). Accordingly, " '[i]f sufficient findings are not made, we must reverse unless the record is clear and uncontroverted such as to allow us to apply the ... factors as a matter of law on appeal.' " *Id.* (citation omitted).

After reviewing the trial court's findings on alimony, we find them to be "so inadequate that we cannot determine the legal basis of the award or whether the trial court abused its discretion in the amount of the award." *Bell v. Bell,* 810 P.2d 489, 493 (Utah App.1991). Thus, "we reverse and remand the alimony award for additional findings on each of the ... [required] factors ..., and a reassessment of the alimony award based upon those findings[,]" if necessary. *Id.*

## C. Property Division

 Defendant argues the trial court abused its discretion in valuing and dividing the marital estate. The trial court entered findings regarding the value of the marital property, which defendant now claims are in error.[13] However, in order to challenge a trial court's findings of fact on appeal, the challenger "must marshal *all* the evidence in support of the findings and then demonstrate that the evidence is insufficient to support the findings in question." *Phillips v. Hatfield,* 904 P.2d 1108, 1109 n. 1 (Utah App. 1995) (emphasis added). We will uphold the trial court's findings of fact if a party fails to appropriately marshal all of the evidence. *Allred v. Brown,* 893 P.2d 1087, 1090 (Utah App.1995). Defendant has not properly marshaled the evidence but has merely recited the findings on point and then highlighted the evidence which he deems contrary to the findings. Accordingly, we do not disturb the trial court's findings and affirm the awards on appeal.[14]

## D. Plaintiff's Attorney Fees

 Defendant claims the trial court erred in ordering him to pay plaintiff's attorney fees because the court failed to consider defendant's ability to pay and plaintiff's need for the award. The trial court has the authority to award attorney fees in a divorce action pursuant to Utah Code Ann. § 30–3–3 (1995). However, the decision to make such

ported on the basis of defendant's noncompliance with the discovery orders. *See generally, DeBry v. Noble,* 889 P.2d 428, 444 (Utah 1995) (may affirm on any proper basis even though trial court's ruling was based on other ground); *State ex rel. H.R.V. & B.P.V.,* 906 P.2d 913, 918 (Utah App.1995) (same).

**13.** This notwithstanding defendant's evidentiary contribution to the fact finding process.

**14.** We note defendant's argument that the trial court erred in valuing the marital property at the time of the parties' separation. "However, where one party has dissipated an asset, hidden its value, or otherwise acted obstructively, the trial court may, under its broad discretion, value the property at an earlier date, i.e., separation." *Peck v. Peck,* 738 P.2d 1050, 1052 (Utah App. 1987). Defendant has acted obstructively in the case at bar by failing to give accurate, verifiable accountings of his income and assets. Thus, it was well within the trial court's discretion to value the property at the time of the parties' separation, as opposed to valuing the property at the time of trial. *See Shepherd v. Shepherd,* 876 P.2d 429, 432–33 (Utah App.1994).

an award " 'must be based on evidence of the financial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees.' " *Willey v. Willey*, 866 P.2d 547, 555 (Utah App. 1993) (quoting *Bell v. Bell*, 810 P.2d 489, 493 (Utah App.1991)). The failure to consider any of the enumerated factors is ground for reversal on the fee issue. *See id.* at 556; *Rudman v. Rudman*, 812 P.2d 73, 77 (Utah App.1991).

The trial court entered the following finding of fact regarding attorney fees:

> Plaintiff's fees and costs were submitted by ledger ... to the court in the total sum of $25,844.88. Plaintiff's attorney ... was sworn and testified concerning the fees. He testified that his hourly charge was $120.00, his associate ... $100.00, that those were reasonable and customary, and most were incurred in efforts to have Defendant reveal his finances. The Court finds under all circumstances including the *parties['] ability to pay* and Defendant's demonstrated pattern of conduct, that Plaintiff's fees and costs are reasonable *and necessary* in full, and awards Plaintiff judgment for fees and costs against the Defendant in the sum of $25,844.88.

(Emphasis added.)

Although the trial court concludes that plaintiff's attorney fees were "necessary," there is no finding regarding plaintiff's need for an award of attorney fees. As a result, the findings and conclusions are insufficient to allow a meaningful review of the trial court's ruling, especially in the face of the award of substantial marital assets. *See Willey*, 866 P.2d at 555 (" 'We have consistently encouraged trial courts to make findings to explain the factors which they considered relevant in arriving at an attorney fee award.' ") (citation omitted). We therefore reverse the attorney fees award to plaintiff and remand for the entry of further findings consistent with this opinion.

■■■ Plaintiff requests attorney fees on appeal. Generally, when fees in a divorce case are granted to the prevailing party at the trial court, and that party in turn prevails on appeal, then fees will also be awarded on appeal. *Bell v. Bell*, 810 P.2d 489, 494 (Utah App.1991). In this case, if the trial court determines that plaintiff is still entitled to attorney fees after considering the above enumerated factors, because she prevailed on the central issue on appeal, the entry of defendant's default, she shall be awarded her attorney fees incurred as a result of this appeal. *See id.* This amount shall be determined on remand.

### E. Failure to Incorporate Juvenile Court's Order

■■■ Lastly, defendant takes issue with the failure of the district court to incorporate into the divorce decree the juvenile court's order regarding custody and visitation. Plaintiff agrees with defendant's position to the effect that crucial language regarding joint custody and ongoing counseling was omitted. Accordingly, we remand the issue to the district court so that the order of the juvenile court can be incorporated into the divorce decree.

### CONCLUSION

■■■ We conclude the trial court did not abuse its discretion in entering defendant's default. As a result, the evidentiary hearing conducted on December 8, 1994, and the entry of the findings of fact, conclusions of law, and decree of divorce were proper. Furthermore, because defendant did not marshal all of the evidence in support of the trial court's findings regarding the valuation and division of the marital property, this court will not disturb the trial court's findings on appeal. We remand the issue of alimony for the entry of further findings. We also remand to the trial court for findings on the issue of plaintiff's need for attorney fees and, if appropriate, the determination of

plaintiff's attorney fees on appeal. Lastly, we remand so the juvenile court's order may be incorporated in the divorce decree.[15]

GREENWOOD and JACKSON, JJ., concur.

---

15. Defendant also claimed that the child support amount was incorrect. However, after reviewing defendant's argument, we find the trial court did not deviate from the child support guidelines, *see* Utah Code Ann. § 78–45–7.12 (Supp.1995), and accordingly, find defendant's claim to be without merit. Thus, we *decline to discuss it on* appeal. *See State v. Allen,* 839 P.2d 291, 303 (Utah 1992).

We also reject defendant's argument that plaintiff's brief should be stricken for failure to comply with the Utah Rules of Appellate Procedure. Finally, we reject defendant's request that Judge Harding be recused from the case because defendant failed to brief the issue on appeal. *See State v. Yates,* 834 P.2d 599, 602 (Utah App. 1992).