Nona W. WATSON, Plaintiff
and Appellant,

v.

Norman A. WATSON, Defendant
and Respondent.

No. 14652.

Supreme Court of Utah.

March 16, 1977.

Gary N. Anderson and Lyle W. Hillyard, Hillyard & Gunnell, Logan, for plaintiff and appellant.

George W. Preston, Logan, for defendant and respondent.

CROCKETT, Justice:

Plaintiff, Nona W. Watson seeks readjustment of alimony and property awards made in a divorce decree which she contends is inequitable and unjust.

The parties were married in 1942. Four children were born to them. All are now adults and we are not concerned with them herein. After 33 years of marriage, plaintiff commenced this proceeding in 1975. Upon a trial of one day in which the main concern was as to property rights, the divorce was granted to the plaintiff. She was awarded the home in Logan, worth about $48,000, subject to her maintaining it and making the insurance and mortgage payments. Defendant was also given a lien on the home in the amount of about one-half its value, $24,000, which is to be paid to him if and when it is sold.

Plaintiff had been a school teacher for some years but had suffered an injury in a fall and has since been unable to return to work. Defendant has also been a school teacher for many years with the federal government, teaching at Shiprock, New Mexico. His annual salary is something over $19,000 and he should be near retirement. The decree requires him to pay certain existing debts incurred by the parties and to pay plaintiff $200 per month alimony so long as he was so employed by the Federal Government; and if the plaintiff returned to work on her former basis of $850 per month, or more, then the alimony would be reduced to $100 per month. Each party received one of the family cars and a motor home was to be sold and the proceeds divided equally.

It also appears that the defendant has bought considerable amounts of silver and turquoise Indian jewelry to which, as we set out below, he gave an estimate of value of about $6,000. The trial court also ordered that this be divided, and since plaintiff had about $1,000 worth in her possession, that the defendant should pay her an additional $2,000.

The plaintiff made a timely motion for a new trial in which she averred certain facts which she complained prevented full disclosure of essential facts to the court: that when a restraining order was served on defendant on July 11, 1975, he took most of his personal papers, which made it difficult for her to ascertain his assets, particularly with respect to the jewelry referred to; and that due to his being in New Mexico and his failure to retain counsel until just before the trial, she was unable to complete discovery proceedings.

We approach the problem here presented in full awareness of the standard rules which favor the findings, judgments and decrees of the trial court, particularly in divorce matters.[1] Notwithstanding this, the right of review on appeal has its purposes. It is assured by our constitution;[2] and in equity cases this court may review the evidence.[3] It would be remiss in its responsibility and this assured right of appeal would be meaningless if it unquestioningly accepted all actions of the trial court

1. *Allen v. Allen*, 109 Utah 99, 165 P.2d 872; *Harding v. Harding*, 26 Utah 2d 277, 488 P.2d 308; *Stone v. Stone*, 19 Utah 2d 378, 431 P.2d 802.

2. Utah Constitution Art. VIII, Sec. 9.

3. Id; and see *Barker v. Dunham*, 9 Utah 2d 244, 342 P.2d 867.

and remained insensitive to pleas to rectify inequity or injustice. Consequently, the rule is that when it is made to appear that the court has failed to correctly apply principles of law or equity, or that the evidence clearly preponderates against the findings, or that the judgment has so failed to do equity that it manifests a clear abuse of discretion, this court on review will take appropriate corrective action in the interests of justice.[4]

It is further pertinent to observe that in a divorce proceeding, which is sometimes said to be equitable in the highest degree, the granting of a motion for a new trial need not involve setting aside the resolution of all issues, but can be limited to reopening the case to just whatever extent the court deems necessary and desirable in the interests of justice.

With the foregoing in mind we redirect our attention to the dispute over the Indian jewelry. It is one of the aspects of this case which persuades us that the assets and resources of these parties may not have been explored and adjusted as fully as they should have been. Whatever else may be said about deference to the prerogatives of the trial court, that nevertheless should not blind us to attempts at evasion or deception. That such may well have been the defendant's objective in this trial, and therefore gives rise to a suspicion that his other conduct may have been of the same character, is shown by his cross-examination in regard to his investment in the jewelry referred to:

Q. How much money have you invested in turquoise and silver in the last five years?

A. I would hesitate to try to give an accurate amount, because I don't have it at my fingertips.

Q. Can you tell me about how much.

A. It would be a rough guess. Very rough guess. Do you want a rough guess?

Q. Yes.

A. In silver and turquoise?

Q. Yes.

A. What are you referring to when you say silver and turquoise?

Q. Well, you can tell me about jewelry you purchased, either silver or turquoise you purchased and invested. You talked about investments you have had. How much in the last five years of that?

A. I would suppose that I have six or seven thousand worth.

In regard to the value of defendant's investments in this Indian jewelry, in connection with her motion for a new trial, the plaintiff averred that after the trial she found checks and receipts indicating that defendant had purchased such jewelry to the extent of about $17,000.

In addition to the uncertainty as to the true value of the Indian jewelry, the record leaves something to be desired as to definiteness of the incomes, present and prospective, and pensions of these parties, so that it is difficult to determine whether the disposition of property and more particularly the alimony award is in fact equitable and just. There should be a further examination and more definite determination as to when the defendant will retire and what his pension will be; whether due to plaintiff's disability she will remain unemployed, or return to work, and if so, what will be her salary, and what the facts are as to her pension rights.

However sorry a commentary on some aspects of the human condition the fading away of other values in this marriage may be, the stark and brutal fact to be reckoned with is that they appear to be gone; and that the matter of greatest concern to these parties now is the material residuum. To them this is, quite understandably, of the gravest importance because it represents, not only the material accumulations of the major portion of their life times, but perhaps also may be regarded by them in some measure as vindication of the position each takes toward the other. Accordingly, it is essential and appropriate that the controversy be given thorough and serious consideration.

4. *Wiese v. Wiese,* 24 Utah 2d 236, 469 P.2d 504; *Curry v. Curry,* 7 Utah 2d 198, 321 P.2d 939.

Consistent with what has been said herein it is our opinion that the interests of justice will best be served by remanding this case for the purpose of giving both parties an opportunity to make any further disclosures they may desire concerning the matters discussed herein to assist the court in achieving the objective to be desired; to provide the best possible foundation for them to carry forward their lives in the most happy and useful manner achievable under the circumstances.[5]

It is so ordered. Costs to plaintiff (appellant).

ELLETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.

---

5. *Wilson v. Wilson,* 5 Utah 2d 79, 296 P.2d 977; *Searle v. Searle,* 522 P.2d 697 (Utah).