**Glen P. WILLEY, Plaintiff and Petitioner,**

v.

**Rosalind Ann Johnson WILLEY, Defendant and Respondent.**

No. 960229.

Supreme Court of Utah.

Dec. 30, 1997.

Ellen Maycock, Salt Lake City, for plaintiff and petitioner.

Roger D. Sandack, Salt Lake City, for defendant and respondent.

On Certiorari to the Utah Court of Appeals

RUSSON, Justice:

We granted Glen P. Willey's petition for a writ of certiorari to review the Utah Court of Appeals' increase of the trial court's

award of alimony and attorney fees. We reverse and remand.

## BACKGROUND

Glen P. Willey and Rosalind Ann Johnson Willey were married April 29, 1982. No children were born as issue of this marriage. However, Rosalind Willey had three children from a previous marriage. Before their marriage, Rosalind Willey worked in a retail clothing store, earning approximately $11,000 a year. During the marriage, she periodically worked part time, earning at most $6871 a year. Glen Willey was a stockbroker with annual earnings during their married years ranging from $73,096 to $138,052.

In 1990, after more than eight years of marriage, Glen Willey filed for divorce on the ground of irreconcilable differences. The trial court granted a decree of divorce on January 14, 1992. In doing so, it divided the marital property and awarded Rosalind Willey alimony in the amount of $1500 a month for one year and $1000 a month for the following three years, at which time alimony was to terminate. The trial court also awarded her $5000 in attorney fees.

Rosalind Willey appealed to the court of appeals, claiming that the trial court had abused its discretion in its award of alimony, in its division of marital property, and in its award of attorney fees. She also requested attorney fees for the appeal.

The court of appeals affirmed the trial court on some issues but reversed and remanded on the issues of alimony and attorney fees because of insufficient findings of fact. *Willey v. Willey*, 866 P.2d 547, 549 (Utah Ct.App.1993). With respect to alimony, the court of appeals held that the trial court had failed to make appropriate findings of fact in support of its determination of alimony, particularly as to the parties' financial needs, Rosalind Willey's need for rehabilitative alimony, and the division of debts. Therefore, the court of appeals reversed and remanded the issue of alimony to the trial court for further findings and for reassessment of alimony based upon those findings.

As for attorney fees, the court of appeals also reversed and remanded, stating:

[T]he trial court made no findings regarding either Mrs. Willey's ability to pay her own attorney fees or Mr. Willey's ability to pay her fees. Coupled with the court's failure to make findings as to the reasonableness of her fees, we have no explanation why the court awarded Mrs. Willey approximately twenty-five percent of her request.

*Willey*, 866 P.2d at 556. The court of appeals remanded for appropriate findings on the ability of each party to pay his or her own attorney fees and the reasonableness of such fees. The court of appeals stated that if the trial court again awards Rosalind Willey attorney fees based upon appropriate findings of fact, the trial court should also award her attorney fees for the appeal.

On remand, the trial court held a hearing and received additional evidence. The trial court made new findings of fact and conclusions of law based upon that evidence and the evidence already in the record from the original trial. In doing so, it acknowledged the mandate from the court of appeals, stating:

The court of appeals held that additional findings of fact were necessary with respect to the issues of alimony and attorney fees and specifically directed this court to make such findings on the following issues:

(i) the reasonable financial needs of the parties;

(ii) the division of the parties' debt as it affects the award of alimony;

(iii) the imputation of income to the defendant;

(iv) the ability of each party to pay defendant's attorney fees;

(v) the reasonableness of those fees.

The trial court then made and entered fifty-one findings of fact that addressed the parties' financial needs, the imputation of income to Rosalind Willey, the reasonableness of each party's attorney fees, and Glen Willey's ability to pay Rosalind Willey's attorney fees. The trial court based the following conclusions upon its findings of fact:

(1) The original findings of fact, conclusions of law, and decree in this matter should be amended to delete the require-

ment that [Rosalind Willey] pay one-half of the [loan and deficiency on the house].

(2) The alimony award of $1,500 per month for one year from the date of trial and $1,000 per month for three years thereafter was proper and is affirmed.

(3) [Glen Willey] should be ordered to pay the costs of tuition and books for [Rosalind Willey] for a period of nine quarters at the University of Utah or a comparable university, providing such education is completed within five years of January 31, 1995, to assist [Rosalind Willey] in enhancing her earning potential.

(4) [Glen Willey] should be ordered to pay [Rosalind Willey] additional alimony in the amount of $500 per month while [Rosalind Willey] is a fully matriculated student for a maximum of nine quarters to be completed within five years following the date of this order.

(5) [Glen Willey] should be ordered to pay [Rosalind Willey] additional attorney's fees in the amount of $10,000.

In short, the trial court did not alter the original alimony award but did add a rehabilitative alimony award which ordered Glen Willey to pay her education costs and an additional $500 a month while she attends school. The trial court also deleted her debt on the house and increased the award of attorney fees.

Again, Rosalind Willey appealed to the court of appeals. On the second appeal, the court of appeals was not satisfied that the trial court had fully and adequately addressed the issues remanded. It characterized the trial court as having "entered additional findings of fact on some of the issues we directed it to address by our remand order, but failed to address others." *Willey v. Willey*, 914 P.2d 1149, 1151 (Utah Ct.App. 1996). Particularly, the court of appeals criticized the trial court's treatment of alimony based upon Rosalind Willey's claim of expenses and its award of attorney fees. As to the issue of alimony, Rosalind Willey submitted at trial an itemized statement of monthly expenses which included monthly unreimbursed medical expenses of $660. The trial court reduced this amount, finding:

> [Rosalind Willey's] monthly unreimbursed medical/dental expenses of $660 per month are unreasonably high and should be reduced to $60 per month. While the record shows that defendant had major surgery in the fall of 1991, there is nothing in the record to establish why the ongoing expenses would continue on a monthly basis.

However, the court of appeals reversed the trial court in this regard,[1] stating that the "sheer absence of any evidence upon which to base factual findings regarding these adjustments makes them unacceptable." And instead of accepting the trial court's findings or remanding the matter a second time to the trial court for further action, the court of appeals, on its own, accepted at face value the statement of expenses as submitted by Rosalind Willey and increased the alimony to reflect the entire amount claimed. The court of appeals did accept the trial court's finding with respect to the imputed income for Rosalind Willey and her rehabilitative alimony award. As a result, the court of appeals increased alimony to $2240 a month and extended the term by more than four years.

As to the issue of Rosalind Willey's attorney fees, the trial court entered seven findings of fact addressing various issues related to, but not including, the reasonableness of the requested attorney fees. However, the court of appeals again held that on remand the trial court had failed to fully address the issue and make adequate findings as to the reasonableness of the attorney fees. And instead of remanding the matter a second time to the trial court for further findings and consideration, the court of appeals took it upon itself to increase the attorney fees award from $15,000 to $36,015 plus costs. The court of appeals thus made its own conclusion as to what it considered proper alimony and attorney fees and directed the trial court to amend the divorce decree accordingly.

---

1. The court of appeals also reversed the trial court's similar treatment of Rosalind Willey's claimed monthly automobile expenses.

**230**

Glen Willey appeals the court of appeals' decision to this court. He argues that the court of appeals erred in increasing the duration and amount of alimony. Specifically, he argues that the court of appeals erred in rejecting the trial court's findings as to Rosalind Willey's reasonable living expenses and erred in its own determination of alimony. He also argues that the court of appeals erred in increasing the award of attorney fees. He contends that the court of appeals awarded an amount of attorney fees not sought by Rosalind Willey and in awarding such fees did so without any findings of fact or evidence in support thereof.

## STANDARD OF REVIEW

■ On a writ of certiorari, we review the decision of the court of appeals, not that of the trial court. *Butterfield v. Okubo,* 831 P.2d 97, 101 (Utah 1992). When reviewing a trial court's determination of alimony and attorney fees, an appellate court reviews them for abuse of discretion. *Salmon v. Davis County,* 916 P.2d 890, 892, 898 (Utah 1996) (stating that determination of reasonable attorney fees is in sound discretion of the trial court because of its familiarity with litigation, attorneys, and attorney fees in general); *Paffel v. Paffel,* 732 P.2d 96, 100 (Utah 1986) (stating that trial court's award of alimony is not disturbed unless there is clear and prejudicial abuse of discretion); *Owen v. Owen,* 579 P.2d 911, 913 (Utah 1978) (stating that considerable discretion is afforded the trial court "due to the advantaged position and the responsibilities of the trial court in such matters"). However, before this court is the *court of appeals'* own determination of alimony and attorney fees. Because the court of appeals is not in an "advantaged position" to make such determinations, we afford it considerably less discretion. *See State v. Pena,* 869 P.2d 932, 936, 938–40 (Utah 1994).

## ANALYSIS

To assess whether the court of appeals erred in determining the award of alimony and attorney fees or whether it should have remanded the matter to the trial court, we examine the respective responsibilities of tri-

al courts and appellate courts with respect to the determination of alimony and attorney fees. Alimony determinations are within the sound discretion of the trial court because of its advantaged position to assess evidence and ascertain facts. *Owen,* 579 P.2d at 913. The award of attorney fees is also in the "sound discretion of the trial court." *Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988). Again, this is due to the trial judge's familiarity with that particular litigation and with attorney fees in general. *Salmon,* 916 P.2d at 892, 897.

■ However, the trial court in exercising its discretion must make the findings of fact explicit in support of its legal conclusions. *Montoya v. Montoya,* 696 P.2d 1193, 1194 (Utah 1985). This enables an appellate court to determine if the trial court has abused its discretion. Without adequate findings of fact, there can be no meaningful appellate review. *Willey,* 866 P.2d at 551, 555; *Willey,* 914 P.2d at 1151. The appellate court reviews such determinations for abuse of discretion, granting considerable deference to the trial court due to its familiarity with the facts and the evidence. *See Paffel,* 732 P.2d at 100; *Owen,* 579 P.2d at 913; *see also Harding v. Harding,* 26 Utah 2d 277, 280, 488 P.2d 308, 310 (1971).

■ If the appellate court determines that the findings of fact are insufficient to support the conclusion, the appellate court normally remands the matter to the trial court for further proceedings. *See Watson v. Watson,* 561 P.2d 1072 (Utah 1977) (reversing lower court and remanding matter for further proceedings). The trial court is still entrusted with the responsibility to make additional findings and, if necessary, to redetermine the award based upon its new findings because of its unique position to weigh the evidence. It is inappropriate in most instances for an appellate court to disregard the trial court's findings of fact and conclusions of law and to assume the task of weighing evidence and making its own findings of fact. The appellate court is entrusted with ensuring legal accuracy and uniformity and should defer to the trial court on factual

matters. *See Pena,* 869 P.2d at 936; *State v. Thurman,* 846 P.2d 1256, 1266 (Utah 1993).

 In certain instances, the appellate court may exercise equitable powers and take upon itself the responsibility of weighing the evidence and making its own findings of fact. *See Owen,* 579 P.2d at 913; *infra* note 3. However, this exception must not become merely a guise under which an appellate court substitutes its own judgment for that of the trial court. *Alta Pacific Assocs. v. State Tax Comm'n,* 931 P.2d 103, 117 (Utah 1997); *see Pena,* 869 P.2d at 938–40. The appellate court must have a valid reason to take this extraordinary step and then only when the appellate court is in an equal position with the trial court with respect to the facts and evidence at issue. When it does so, it has the same obligation as the trial court—it must weigh the evidence and make findings of fact based upon that evidence to provide a basis for appellate review by this court.

In domestic relations cases, the parties commonly submit statements of assets and expenses as exhibits. Trial courts also commonly accept into evidence exhibits constituting that party's claims without objection. However, this procedure does not necessarily obviate the need for further evidence in support of some items listed on the exhibit. Generally, there is further questioning of certain items contained in the exhibit as to value. Trial judges commonly accept, modify, reduce, or reject claimed items in such exhibits, depending upon the item and according to the evidence or the lack thereof. Thus, it is incumbent upon a party to submit supporting evidence to prove the value of the claimed property or claimed expense to avoid the risk that the trial judge will reduce or reject the value of a particular item. This is especially true where the value of the item appears out of the ordinary. The trial court is not required to accept each item of expense as a proven fact just because it receives a statement of expenses into evidence.

## ALIMONY AND THE PARTIES' EXPENSES

 In the case before us, the trial judge made a specific finding to the effect that Rosalind Willey's claim for monthly unreim-

bursed medical expenses of $660 per month was unreasonably high. He stated that "while the record shows that defendant had major surgery in the fall of 1991, there is nothing in the record to establish why the ongoing expenses would continue on a monthly basis." Thus, the trial judge reduced the unreimbursed monthly medical expenses to $60.

The court of appeals rejected the trial court's finding of fact and conclusion in this regard, stating that the "sheer absence of any evidence upon which to base factual findings regarding these adjustments makes them unacceptable." *Willey,* 914 P.2d at 1152. Then the court of appeals simply accepted Rosalind Willey's statement of monthly unreimbursed medical expenses, despite the lack of supporting evidence, and increased the alimony award to reflect the same.

In effect, the court of appeals substituted its own judgment for the trial court's judgment. Even though the trial court found that her monthly expenses were not supported by evidence and were not reasonable, the court of appeals determined that Rosalind Willey's expenses as set forth in her statement were entirely reasonable without further evidence. Furthermore, the court of appeals mistakenly assumed that both parties had stipulated to the amounts set forth in the statement of expenses, when in fact there is no indication in the record of any such stipulation. Indeed, Glen Willey argues on appeal that the court of appeals incorrectly characterized the submission as a stipulation. He claims that he did not agree to the figures that Rosalind Willey submitted for her monthly expenses.

Rosalind Willey based her request for alimony in part on her claimed need of $660 per month for unreimbursed medical expenses. At trial, she had the burden of proving her monthly need for that amount. The trial court, however, expressly found that there was no evidence to support such a need on a monthly basis and that the amount claimed was unreasonable. Its finding regarding claimed monthly unreimbursed medical expenses was justified and sufficient because

there was no evidence to support the higher figure. Therefore, we conclude that the court of appeals erred in making its own findings of fact and in substituting its own judgment for that of the trial judge as to the claimed medical expenses and in redetermining alimony.

With respect to the rehabilitative alimony, the court of appeals observed that though the trial court's award was designed to allow her return to school and therefore seemed to assume the coexistence of alimony, the original alimony award would expire before she could possibly complete her schooling. "[G]iven the confused[ ] and indeed patently unfair nature of the prior order," the court of appeals decided to make the modification itself, extending the payment period by more than four years. *Id.* at 1153.

Faced with this "confusion," the court of appeals should have remanded the issue to the trial court with instructions to clarify the duration of the award. Instead, it took it upon itself to extend the alimony payment period more than four years. In doing so, however, it again failed to base its findings of fact upon evidence, precluding meaningful appellate review by this court. Just as the trial court must make sufficient findings of fact to permit review of its determinations by the court of appeals, so the court of appeals, when making its own conclusions, must make sufficient findings of fact to permit review of its determinations by this court. Thus, the court of appeals erred in taking upon itself the task of making this factually dependent determination as to the duration of the alimony award without making findings of fact based upon the evidence.

## ATTORNEY FEES

The award of attorney fees is a highly fact-dependent process. Indeed, in determining reasonable attorney fees, this court has set out factors that should be considered. These factors

> include, but are not limited to, "the difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality for similar services, the amount

> involved in the case and the result attained, and the expertise and experience of the attorneys involved."

*Salmon,* 916 P.2d at 893 (quoting *Cabrera v. Cottrell,* 694 P.2d 622, 625 (Utah 1985)); *see id.* at 897. Therefore, a trial court is much better suited to determine reasonable attorney fees than is an appellate court, which can only consider evidence that is in the record. The trial court has personal knowledge and first-hand experience with the litigation, the skill, the experience, and the effectiveness of the attorneys involved, and attorney fees in general.

In the case before us, the following findings of fact were made by the trial court relating to the reasonableness of attorney fees:

> (44) In applying the factors to be considered in making an award of attorneys fees, the court finds that this case was not and should not have been particularly difficult. It was a relatively routine divorce of a couple with extreme financial difficulties and disagreements on how to manage their incomes and expenses.

> (45) The court further finds that the efficiency of the attorneys in handling the case was not good and the reasonableness of the number of hours is excessive and beyond a reasonable evaluation of the case.

> (46) At the time of trial, defendant's attorney requested fees of $19,215.00. The present affidavit shows 240.1 hours at a billing rate of $150.00 per hour which results in fees of $36,015.00.

> (47) While defendant's attorney does not request payment for all recorded hours, he does request payment for 101 hours in the amount of $15,150.00 [and] for fees and costs of $1,539.38 for a total of $16,689.38. This amount is presumably in addition to the $5,000.00 already paid by plaintiff for defendant's attorney's fees after the trial.

> (48) The court finds that the rate of $150 per hour for the experience of defendant's counsel is high, but within reasonable range.

> (49) However, the amount of attorneys' fees charged in this case, considering the marital estate, cannot justify the fees in-

curred. The parties' net worth approached zero and the only meaningful asset was the plaintiff's earning capacity which he brought into the marriage. The court finds that the entire financial condition of the parties cannot justify combined attorneys' fees in excess of $65,000, with little or no marital property remaining. Accordingly, the court finds the fees are not reasonable.

(50) The ability of defendant to pay attorney's fees is minimal and the court finds it reasonable that plaintiff should pay an additional amount to defendant for attorney's fees in the amount of $10,000. In making this award, the court has considered the fees incurred on appeal. This amount, combined with the prior amount plaintiff was ordered to pay, shall mean that plaintiff shall pay to defendant a total amount of $15,000 towards her attorney's fees. The court finds that this is an equitable amount concerning the incomes of the parties and the other matters discussed above.

However, the court of appeals summarily dismissed the trial court's findings and proceeded to fix its own award, stating in full:

Without adequate explanation or findings, on remand the trial court ordered Mr. Willey to pay an additional $10,000 as the correct adjustment.

Under the unique circumstances of this case we award Ms. Willey a total of $36,015 in attorney fees, plus costs, for fees and costs incurred at trial, on appeal, on remand, and on this appeal.

*Willey*, 914 P.2d at 1157.

The court of appeals again substituted its own judgment for the trial court's. Despite the trial court's considerable findings on the subject, the court of appeals rejected the trial court's findings and increased the award of attorney fees without any supporting findings of fact or even an explanation as to how it calculated the new figure. In doing so, the

court of appeals did the very thing it criticized the trial court for doing—making a determination without supporting findings of fact based upon the evidence. Again, without adequate findings, there can be no meaningful appellate review of the court of appeals' determinations by this court.

Not only did the court of appeals fail to make findings in support of its award, but it failed to make an explicit finding as to the reasonableness of the fees. It failed to do so in spite of its reversal of the trial court for that same deficiency. Because a finding on the reasonableness of the attorney fees is essential to the award of attorney fees, we reverse the court of appeals' award of attorney fees and remand to the court of appeals with instructions to remand the matter to the trial court for further findings as to appropriate attorney fees and the reasonableness thereof.

██ The court of appeals seeks justification for substituting its judgment for the trial court's in "the unique circumstances of this case." *Willey*, 914 P.2d at 1157. Although there is no explanation as to what those circumstances were, the court elsewhere explained that it was "constrained to make [its] own determination[s]" in the interests of finality and economy.[2] *Id.* at 1156. The court of appeals cited *Owen* for the proposition that it possessed sufficient equitable powers to make its own findings, stating:

Rather than remanding again for the trial court to examine these same issues, we will exercise our equitable power to review the evidence directly regarding equitable matters, and to make the necessary findings on the issues not reached by the trial court. *See Owen v. Owen,* 579 P.2d 911, 913 (Utah 1978).

*Willey*, 914 P.2d at 1156. However, while *Owen* does allow for the possibility of the court of appeals' making its own findings based upon the evidence, it actually stands for the proposition that the trial court is

---

**2.** This case has been actively litigated for more than five years, and yet, as the trial court noted, it is not a particularly complex case. It has been twice before the trial court and twice before the court of appeals and is before us now. Furthermore, the marital estate is insignificant in com-

parison to the legal fees incurred in its allocation. These facts clearly motivated the court of appeals to attempt to bring this litigation to a close. Indeed, the court of appeals stated, "To permit the dispute to continue is an injustice to the parties." *Id.* at 1151.

better suited to make findings of fact. This court stated in *Owen:*

> Even though it be true that such proceedings are in equity which this court may review the evidence and make its own findings, the well-settled rule which we have often stated is that, due to the advantaged position and the responsibilities of the trial court in such matters, we will accord some verity to [its] actions; and we will not disturb [its] findings nor the determination made thereon unless it appears that the evidence preponderates against them so that an inequity or injustice has resulted.

579 P.2d at 913 (footnotes omitted). None of the courts in the cases cited by the court of appeals in support of the proposition that it is appropriate for appellate courts to make findings of fact actually exercised this extraordinary equitable power.[3] Instead, those courts relied on the trial court to make the findings of fact. Indeed, they have uniformly required a manifest injustice before an appellate court may take it upon itself to make its own determinations.[4] However, the "injustice" to which the court of appeals refers is not one caused by a clearly unjust determination made by the trial court but rather by the extended proceedings necessary to resolve a marital estate with little or no net value. *Willey,* 914 P.2d at 1151. Although we are aware of the unfortunate length and expense of this litigation, it would be a greater injustice to the judicial system as a whole if we were to allow an appellate court to substitute its own judgment for that of the trial court, which is better positioned for such a task. We reaffirm what this court stated in *Owen* and in many cases since—the trial court is in the best position to evaluate evidence and make findings of fact. This case is not one of such unusual or extraordinary circumstances as to require the court of appeals to usurp the prerogative of the trial court and make its own independent determinations of alimony and attorney fees. However, even if this had been such a case, the court of appeals erred in failing to make findings of fact to support its conclusions.

## CONCLUSION

For the foregoing reasons, we reverse the court of appeals' determination of alimony and attorney fees and instruct the court of appeals to remand both issues to the trial court for adequate findings of fact in support of a determination of the length of time of alimony and the reasonableness of the attorney fees.

DURHAM, Justice, concurring in the result:

I concur in the majority's result but write separately to express my sympathy for the court of appeals' position. The trial court did not merely fail to make sufficient factual findings; it quite blatantly refused to take evidence on certain topics and ignored others. Moreover, another remand will surely cost both parties more in attorney fees through no fault of their own. Thus, the court of appeals attempted to put an end to a bad situation, rather than prolonging it. However, I must agree with the majority that the facts in the record simply do not permit us or the court of appeals to draw any reasonable conclusion on a variety of topics.

Some of the particularly problematic actions of the trial court included the following: The court refused Ms. Willey's request to take Mr. Willey's deposition and conduct discovery concerning Mr. Willey's current economic condition; the judge refused because he thought he had to base his decisions on the parties' economic status as of the trial date, although nothing in the court of appeals' opinion required such a limitation.

---

3. Besides *Owen,* 579 P.2d 911, the court of appeals also cited *Thompson v. Thompson,* 709 P.2d 360, 361 (Utah 1985), *Haddow v. Haddow,* 707 P.2d 669, 671 (Utah 1985), and *Watson,* 561 P.2d at 1073–74, for the proposition that the appellate court has broad equitable powers and is not necessarily bound by the trial court's findings. For that same proposition, Rosalind Willey cited *MacKay v. Hardy,* 896 P.2d 626 (Utah 1995), and *Bergstrom v. Moore,* 677 P.2d 1123 (Utah 1984). However, none of these cases involved an instance wherein the appellate court actually opted to make its own findings.

4. See *Owen,* 579 P.2d at 913; *Jackson v. Jackson,* 617 P.2d 338, 340 (Utah 1980) (holding that trial court's disposition should be overturned only to prevent manifest injustice); *accord Penrose v. Penrose,* 656 P.2d 1017 (Utah 1982).

The court of appeals stated quite clearly that "appropriate findings on the reasonableness of the [attorney] fees and each party's ability to pay should be included." *Willey v. Willey,* 866 P.2d 547, 556 (Utah Ct.App.1993). Why the trial court decided that current information about the parties' status was not relevant is difficult to understand. The majority has not specified that findings about the parties' current economic conditions are necessary. I think they are. In making alimony decisions, the court must look forward and make estimates about each party's needs and abilities. In this case, because so much time has passed since the divorce, the court can review what the parties have actually experienced since that time rather than relying on estimates and speculation. Without such fact finding, neither the trial court nor the court of appeals can make reasonable decisions about attorney fees.

Furthermore, the trial court stated in its findings of fact that it could find no evidence in the record as to why Ms. Willey's medical expenses would continue to be $660 per month. But Ms. Willey clearly testified that given her preexisting medical condition, the cheapest insurance she could find was a CO-BRA plan through her husband's employer which cost $560 per month. Mr. Willey did not challenge this amount; in fact, he estimated her unreimbursed medical care expenses at $660 per month. Only a few minutes later in the trial, however, Ms. Willey testified that the $560 monthly premium for health insurance covered her children as well as her. The testimony went on to suggest that insurance for herself alone might cost around $500 a quarter, but then she also said that the $500 would not insure her alone. Therefore, the record lacks support for either the trial court's or the court of appeals' award. Another remand is therefore a necessary evil.

As the majority observes, "[T]he marital estate is insignificant in comparison to the legal fees incurred in its allocation." However, a very significant portion of the fees accrued to this point appears to have resulted from the three appeals and two remands necessitated by the trial court's failure to make adequate findings of fact and the court

of appeals' unsuccessful efforts to meliorate, not by the parties' actions or inadequate lawyering. *See Willey v. Willey,* 914 P.2d 1149, 1156–57 (Utah Ct.App.1996). Hence, the trial court should not penalize Ms. Willey for the paucity of the estate and the inefficiency of the courts by reducing the size of her attorney fee. Rather, the trial court should, as recommended initially by the court of appeals, consider both parties' ability to pay the fees and consider what "reasonable" fees are, given three *necessary* appeals and two remands.

ZIMMERMAN, C.J., concurs in Justice DURHAM's concurring in the result opinion.

HOWE, Justice, concurring and dissenting:

I concur in remanding the case to the trial court for the purpose of clarifying the duration of the award of rehabilitative alimony. I dissent, however, from the further remand to make findings of fact as to the reasonableness of the attorney fees awarded. The trial court has already adequately done that in findings 44 to 50, which are set out in the majority opinion.

To summarize those findings, the court found that the case was routine; that the efficiency of the attorneys was not good and the number of hours spent was excessive; that the rate of $150 per hour is high but within reasonable range; that Ms. Willey's attorney sought payment for 101 hours; that the net worth of the parties was nil; that the fees charged were "not reasonable"; that "the court *finds it reasonable* that plaintiff should pay an additional amount to defendant for attorney's fees in the amount of $10,000 that when added to the $5,000 previously awarded, the plaintiff will have $15,000 toward payment of her attorney fees"; and that "this is an equitable amount" considering the incomes of the parties and the other factors mentioned by the court. (Emphasis added.)

These findings of fact are much more detailed and the analysis of the factors to be considered in awarding fees is more complete than we usually see in divorce cases. I think the findings are completely adequate and

that there is no point in having additional findings made as to the reasonableness of the fees awarded ($15,000). I frankly do not know what more the trial judge can state in support of the award made.

One other matter deserves comment. When this case was before the court of appeals the first time, the court wrote at 866 P.2d 556 that the trial court had not explained why it awarded Ms. Willey only approximately twenty-five percent of her requested attorney fees. In my opinion, no such explanation is necessary. In some cases, requiring each party to bear his or her own attorney fees is fair and reasonable. When fairness suggests that one party should financially assist the other party with his or her fees, there is no "presumption" or "inference" that the amount requested is reasonable, because in a divorce case many factors must be considered in determining a reasonable fee. The amount requested is just the starting point. That amount must be examined in light of factors considered by the trial judge in this case. This will often result in a substantial reduction, just as it did here. Lawyers who represent parties in divorce cases must be realistic: there is often a limit to what the parties can afford and what is justified by the worth of the marital estate. Lawyers should not expect to be as well paid in such divorce cases as they are paid in other matters they may handle. Here the parties had been married for a relatively short time, eight years. The marriage was the second for both of them, and they had no children together. At the time of the divorce, the marital estate had a negligible net worth. The primary issue in the divorce was the amount of alimony to be awarded to Ms. Willey. Why the determination of that amount should incur combined attorney fees in excess of $65,000, as observed by the trial court, is difficult to understand.

I commend the trial judge for being thoughtful and careful in his analysis of what is a reasonable fee and limiting his award to an amount that Mr. Willey realistically can pay without being financially burdened for years to come. (Compare the $15,000 awarded by the trial court with the $36,015 awarded by the court of appeals which amount is roughly one-third of Mr. Willey's annual income before taxes.) There may be little courts can do about relieving the emotional distress suffered by parties to a divorce. But they should not add to that distress by saddling the parties with unrealistic attorney fees that they must struggle to pay in future years and thus frustrate the new start they seek.

STEWART, Associate C.J., concurs in the concurring and dissenting opinion of Justice HOWE.