1999 UT 75

**Sheila REESE, Plaintiff, Petitioner, and Cross-Respondent,**

v.

**Thomas E. REESE, Defendant, Respondent, and Cross-Petitioner.**

No. 980004.

Supreme Court of Utah.

Aug. 20, 1999.

Mary C. Corporon, Brian J. Gardner, Salt Lake City, for plaintiff.

David M. McGrath, Brent D. Ward, Bret F. Randall, Salt Lake City, for defendant.

RUSSON, Justice:

¶ 1　This petition arises out of the divorce decree of Sheila and Thomas Reese.  The trial court apportioned property, ordered Thomas to pay child support, and denied Sheila's request for alimony.  Sheila appealed.  The court of appeals directly treated only three of the many issues presented.  It affirmed the trial court's decree with respect to Sheila's imputed income, ordered modifications of the decree to apportion day-care expenses equally, and postponed the date on which Sheila would be obligated to satisfy a lien in Thomas' favor.  *See Reese v. Reese*, No. 960749–CA (Utah Ct.App. Nov. 6, 1997) (unpublished mem. decision).  On certiorari, Sheila attempts to revive each of the errors she asserted in her original appeal.  Thomas cross-petitioned the court of appeals' modification of the date for satisfaction of his lien.

## BACKGROUND

¶ 2　The parties presented numerous factual allegations before the trial court and the court of appeals.  We relate only those facts

pertinent to our review of the court of appeals' decision. Thomas and Sheila Reese were married approximately twelve years. They were separated the last five years of their marriage. Both Thomas and Sheila had children from former relationships, and they had one child together, a daughter who was ten years old at the time their divorce became final. While separated, Sheila retained custody of their daughter, and Thomas stipulated that Sheila should continue to have custody after their divorce. Sheila did not obtain a temporary support order, but Thomas voluntarily paid $100 per month for child support and assisted with Sheila's phone bills.

¶ 3   Thomas and Sheila both worked outside their home. Thomas worked full-time as a school teacher during the school year but did not obtain secondary employment during the summer. Sheila worked part-time as a secretary. Thomas and Sheila kept separate bank accounts, and they each owned or acquired parcels of residential real estate during their marriage. They lived in a house on Herbert Avenue in Salt Lake City. Sheila inherited this property shortly after marrying Thomas.[1] During this time, Thomas assisted in maintaining the home. Thomas arranged for Sheila to directly convey a portion of the residence to him and prepared an agreement relating to this transaction. The agreement stated that Sheila had granted a one-quarter interest to Thomas in consideration of his fulfilling a prior agreement "not to be a financial burden to the family" and for the work he had performed, "such as lanscapping [sic], roof repairs and other minor repairs." The agreement also purported to obligate Sheila—in the event the parties should divorce or separate—to accept return of the one-quarter interest as "a settlement in full for child support and alimony."

¶ 4   Sheila filed for divorce, citing irreconcilable differences. The district court conducted a one-day bench trial to resolve property disputes and child support and alimony issues. Both Sheila and Thomas presented evidence relating to their income, their ex-

penses, and their relative contributions to the various residential properties they owned or had acquired during their marriage.

¶ 5   The trial court issued findings of fact and conclusions of law. The court held that Sheila was voluntarily underemployed and imputed to her an income based on the full-time equivalent of the lowest wage she was then earning as a part-time secretary. The court also considered the rental income Sheila was receiving from her properties. The court based Thomas' income assessment on the actual salary he earned as a school teacher plus rental income he was receiving. On the basis of these assessments, the court ordered Thomas to pay $372 per month in child support but awarded no alimony. The court resolved disputes concerning Sheila and Thomas' Herbert Avenue home by awarding it to Sheila but subjecting it to a lien for the one-quarter interest Sheila had conveyed to Thomas during their marriage.

¶ 6   On appeal to the court of appeals, Sheila challenged numerous aspects of the trial court's decree. Specifically, she contested the trial court's imputation of her income, the refusal to impute additional income to Thomas, the award to Thomas of a one-quarter interest in her home, the failure to apportion child care expenses equally, and the refusal to award alimony, attorney fees, or retroactive child support. With respect to the issues of alimony and attorney fees, Sheila argued that the trial court had failed to accurately calculate her projected expenses to include health care costs and the cost of purchasing a new automobile. The court of appeals directly addressed only three of these issues. First, it affirmed the trial court's imputation of Sheila's income. Second, it ordered an amendment of the decree to apportion child care expenses equally. Finally, it affirmed the award of the one-quarter interest in Sheila's home but then sua sponte ordered that the due date for the lien in Thomas' favor be delayed until the couple's daughter reaches the age of majority. The court of appeals disposed of the remainder of the issues on appeal by simply stating,

---

1.   Sheila and Thomas each derived rental income from other properties. The trial court's decree

relating to those properties is not at issue here.

"[W]e have assessed the other issues raised by appellant; however, they respectively lack either merit, proper preservation, or proper legal argument."

## DISCUSSION

¶ 7  It is a fundamental tenet of certiorari review that "we review the decision of the court of appeals, not that of the trial court." *Willey v. Willey*, 951 P.2d 226, 230 (Utah 1997). However, Sheila Reese treats her petition as a new and unrestricted opportunity for comprehensive appellate review of the trial court's decree. She styles her petition as an "appeal" from the court of appeals, and the arguments in her briefs contain little, if any, reference to the court of appeals' decision.

¶ 8  We nevertheless acknowledge that Sheila's ability to bring her petition was hampered by the court of appeals' inadequate opinion. Of the many issues Sheila raised on appeal, the court of appeals addressed only three. We have reviewed the briefs presented to the court of appeals, and we cannot agree with its assessment that all the issues it refused to treat simply lacked merit or proper legal argument. In appropriate cases, the court of appeals may dispose of issues not properly raised or preserved. However, this court cannot properly conduct certiorari review unless the court of appeals at the very least identifies the basis for refusing to treat an issue. In this case, the court of appeals' opinion does not even designate which issues lacked merit, which issues were not properly preserved, and which issues were not supported by proper legal argument.

¶ 9  Because the court of appeals failed to address issues properly before it and because we do not review the decision of the trial court on certiorari to the court of appeals, *see id.*, we must remand the untreated issues to the court of appeals for proper consideration. The court of appeals should either address each of the issues on the merits or provide a satisfactory and specific explanation (e.g.,

failure to preserve the issue at trial or improper or inadequate briefing on appeal) for refusing to do so.

¶ 10  We now turn to the scope of our certiorari review in this opinion. The court of appeals rendered reviewable decisions on the following issues: (1) the trial court's imputation of Sheila's income for purposes of determining Thomas' child support obligations; (2) the trial court's award to Thomas of a one-quarter interest in Sheila's home; and (3) its own sua sponte ruling delaying the date on which Sheila must satisfy Thomas' lien.[2]  We review the court of appeals' conclusions of law for correctness and grant them no deference. *See Carrier v. Pro–Tech Restoration*, 944 P.2d 346, 350 (Utah 1997). With respect to the court of appeals' power to make equitable decisions in domestic relations matters, the court of appeals is not entitled to substitute its judgment for that of the trial court except in the extraordinary circumstance of a "manifest injustice." *See Willey*, 951 P.2d at 233–34. Therefore, to the extent the court of appeals overruled the equitable holdings of the trial court and substituted its own judgment, "we afford [the court of appeals] considerably less discretion" than we would afford a trial court on direct appeal. *See id.* at 230.

## I.  CALCULATION OF CHILD SUPPORT

¶ 11  The trial court based its calculation of child support obligations on the relative imputed incomes of Thomas and Sheila. Sheila argues that the court of appeals should have held the trial court abused its discretion in finding she was voluntarily underemployed and in imputing income to her based on the full-time equivalent of her lowest part-time salary.

¶ 12  The court of appeals briefly addressed Sheila's imputed income argument and concluded that the "trial court's determination that appellant was voluntarily underemployed was adequately supported by her testimony that she chooses to work part-time

---

2.  The court of appeals also provided a distinct ruling on the issue of apportionment of child care expenses. However, neither party has challenged that ruling on certiorari; it therefore stands.

so that she may work only the hours during which her daughter is in school."

¶ 13  We affirm this holding.  Utah's Uniform Civil Liability for Support Act governs the imputation of income for purposes of determining support obligations.  According to section 78–45–7.5(7) of the Utah Code:

(a) Income may not be imputed to a parent unless the parent stipulates to the amount imputed or a hearing is held and a finding made that the parent is voluntarily unemployed or underemployed.

(b) If income is imputed to a parent, the income shall be based upon employment potential and probable earnings as derived from work history, occupation qualifications, and prevailing earnings for persons of similar backgrounds in the community.

(c) If a parent has no recent work history, income shall be imputed at least at the federal minimum wage for a 40–hour work week.  To impute a greater income, the judge in a judicial proceeding or the presiding officer in an administrative proceeding shall enter specific findings of fact as to the evidentiary basis for the imputation.

(d) Income may not be imputed if any of the following conditions exist: (i) the reasonable costs of child care for the parents' minor children approach or equal the amount of income the custodial parent can earn; (ii) a parent is physically or mentally disabled to the extent he cannot earn minimum wage; (iii) a parent is engaged in career or occupational training to establish basic job skills; or (iv) unusual emotional or physical needs of a child require the custodial parent's presence in the home.

Utah Code Ann. § 78–45–7.5(7) (Supp.1998).

¶ 14  The trial court properly conducted a hearing as required by subsection (a) and entered a specific finding that Sheila was underemployed.  Sheila has not offered any substantial support for her argument that the trial court could not impute income after conducting a proper hearing.

¶ 15  With respect to subsection (b)'s requirement that imputation of income be based on experience and qualifications, testimony at the hearing demonstrated that Sheila had regularly performed part-time secretarial work for Granite School District at eight dollars an hour and eleven dollars an hour.  There is no indication that her wages differed from those of other persons performing the same type of work.  Although there was no specific testimony regarding Sheila's "occupation qualifications" or the "prevailing earnings for persons of similar backgrounds in the community," these factors were necessarily implied by the nature of the work Sheila had regularly performed.  Sheila does not assert that she is in any way unqualified to receive at least the lower of the two wages or that her work for the school district was so specialized that her qualifications could not transfer to other contexts;  and there is no indication the trial court's imputed salary diverged from the prevailing wages for persons with Sheila's background and qualifications.

¶ 16  Sheila asserts that the trial court should have applied subsection (c) to impute her income at no more than the federal minimum wage.  However, subsection (c), by its terms, applies only to circumstances where "a parent has no recent work history."  It was undisputed that Sheila had recent work history.

¶ 17  Sheila argued her daughter has emotional needs that would justify Sheila's remaining at home during the hours when her daughter is not at school.  Subsection (d) states that income may not be imputed if an unusual emotional or physical need dictates that the custodial parent should remain at home.  The only testimony Sheila presented on this question related to allegations that Thomas had abused one of Sheila's other daughters from a former relationship.  Thomas and Sheila are now divorced, and Thomas' visitations are supervised.  Given the vague nature of Sheila's claims on this issue, and the lack of concrete evidence linking the alleged abuse of another child with the present needs of the Reeses' daughter, we cannot assume the trial court abused its discretion in rejecting Sheila's arguments on this issue.  In sum, we find no basis for reversing the court of appeals affirmance of the trial court's imputation of Sheila's employment income.

¶ 18  Sheila also claims error because the trial court did not find that Thomas was underemployed.  Thomas is employed as a teacher at a school that observes the traditional three-month summer break.  He does not obtain additional salaried employment during the summer.  Sheila argues that Thomas' failure to obtain secondary employment during the summers constitutes voluntary underemployment.  The court of appeals did not address this issue.  We remand to the court of appeals for proper consideration as directed above.

¶ 19  Sheila further maintains the trial court should have awarded her retroactive child support even though she had not previously applied for a temporary order of support.  The court of appeals did not address this issue.  We remand to the court of appeals for proper consideration.

## II.  THE HERBERT AVENUE PROPERTY

¶ 20  The trial court found that Sheila had conveyed a one-quarter interest in the Her-

bert Avenue home to Thomas pursuant to a valid contractual agreement.  The court of appeals affirmed the trial court's decree with respect to the validity and enforceability of the contract.

¶ 21  Sheila challenges the court of appeals' affirmance of the trial court on four grounds.  She first claims the court of appeals should have ruled the trial court abused its discretion.  The asserted abuse of discretion consists in the trial court's incorporating into the divorce decree a signed agreement that allegedly did not meet legal requirements for a valid and enforceable contract between spouses.  Second, Sheila asserts that the consideration stated in the purported contract was insufficient.  Third, Sheila contends that Thomas did not perform his part of the bargain.  Finally, Sheila maintains that certain portions of the agreement violate public policy, which in turn renders all provisions invalid or unenforceable.  We treat these arguments in order.

¶ 22  The agreement at issue contains several provisions.[3]  The first provision states

3.  The pertinent text of the document reads:

> This document is an Agreement between SHEILA NANCY WHITE REESE and THOMAS E. REESE pertaining to a JOINT QUITCLAIM DEED dated the 8 day of July 1988, between said parties . . . concerning said house and property. . . .  I THOMAS E. REESE . . . do acknowledge and agree to the following; that, 1) I own 25 percent (%) of the house and property located [on] Herbert Avenue, Salt Lake City, Utah and SHEILA NANCY WHITE REESE owns 75 percent (%) of said property. 2) I will not record this document out of consideration of my wife's request, with the exception that is stated in number four below regarding Separation, Divorce or her death.  3) In the event of my death, my 25 percent (%) of said house and property becomes the sole property of SHEILA NANCY WHITE REESE. 4) In the event of Separation, Divorce, or my wife's death, I can—at my discretion—call my lawyer . . . or anyone acting on his behalf, and authorize the above-mentioned JOINT QUITCLAIM DEED be recorded; or I can request the original copy from my lawyer and I can record it myself.
>   . . . .
>   I SHEILA NANCY WHITE REESE . . . do acknowledge and verify that previous to this AGREEMENT and including the accompanying JOINT QUITCLAIM DEED, full ownership of said property located [on] Herbert Avenue, Salt Lake City, Utah, which is in my name;

> and that there are no mortgages, liens, trusts, or other agreements or documents that may have any rights to said house and property.  I further acknowledge, and do agree to the following; that, 1) THOMAS E. REESE (my husband), has rightfully earned 25 percent (%) ownership of said property through his contributions of monies, time and energy that has gone beyond our verbal agreement previous to marriage whereas he promised not to be a financial burden to the family; further, he has used his time and monies to maintain said property by making helpful improvements such as lanscapping, roof repairs and other minor repairs as they have occurred.  Tom has not only kept his word regarding the above, but because of his financial assistance, I have been able to use my monies to pay insurance and taxes on the above-mentioned house and property, payments and expenses on another house and property I solely am buying; and I have been able to channel the child support payments that I receive for my two daughters towards their individual savings accounts and miscellaneous expenses instead of using it for food and other usual living expenses that occur in a family.  Tom is continuing these efforts; and also facilitating and sharing in the financing and repairs of said property to ensure it is painted, and a new roof is put on as soon as possible.  2) In the event of a separation or divorce from my husband, THOMAS E. REESE, I will accept his 25 percent (%) own-

that Sheila had conveyed a one-quarter interest in the property and this conveyance was in recognition of Thomas' fulfillment of an obligation not to financially burden Sheila or her family and in consideration of work he had performed, or was performing, on the property.

¶ 23 Sheila first asserts the court of appeals should have held the trial court abused its discretion by enforcing, as part of the divorce decree, the written agreement conveying a one-quarter interest in the Herbert Avenue property.[4] Essentially, she contends the agreement is invalid or unenforceable and the trial court therefore could not have relied on it as a basis for distributing the marital property. The trial court clearly premised the exercise of its discretion upon the assumption that the agreement was valid and enforceable. Therefore, the correctness of the trial court's ruling as to the validity and enforceability of the underlying agreement substantially guides our determination of whether the court of appeals correctly held the trial court had not abused its discretion.[5]

¶ 24 On other occasions, we have explicitly acknowledged the general authority of spouses or prospective spouses to arrange property rights by a contract that is recognized and enforced by a court in the event of a divorce. *See, e.g., Despain v. Despain,* 627 P.2d 526, 527 (Utah 1981). Nevertheless, we have observed that contracts between spouses or potential spouses are not necessarily judged on the same terms as contracts executed by persons operating at "arm's length."

In the context of prenuptial agreements, for instance,

[t]he mutual trust between the parties raises an expectation that each party will act in the other's best interest. The closeness of this relationship, however, also renders it particularly susceptible to abuse. Parties to premarital agreements ... are held to the highest degree of good faith, honesty, and candor in connection with the negotiation and execution of such agreements.... [P]remarital agreements "concerning the disposition of property owned by the parties at the time of their marriage are valid so long as there is no fraud, coercion, or material nondisclosure."

*In re Beesley,* 883 P.2d 1343, 1347 (Utah 1994) (quoting *Huck v. Huck,* 734 P.2d 417, 419 (Utah 1986)).

¶ 25 We also have been unwilling to deprive trial courts of their equitable powers to modify agreements made by spouses in contemplation of divorce. "[A]greements between spouses to fix their property rights ... are generally not held to be so absolute as to prevent a court under its equity powers in divorce actions from doing that which justice and equity require for the interest and welfare of the parties involved." *Mathie v. Mathie,* 12 Utah 2d 116, 120–21, 363 P.2d 779, 782–83 (1961); *see also Callister v. Callister,* 1 Utah 2d 34, 37, 261 P.2d 944, 946 (1953). Thus, the general principle derived from our case law is that spouses or prospective spouses may make binding contracts with each other and arrange their affairs as they see fit, insofar as the negotiations are

---

ership of the above said property, or a reasonable portion thereof, as settlement in full for child support and alimony. 3) In the event of my death, THOMAS E. REESE, will be given upon request, the JOINT QUITCLAIM DEED, and AGREEMENT to record immediately if he so chooses.

4. Sheila cites *Mortensen v. Mortensen,* 760 P.2d 304, 308 (Utah 1988), which states that courts should

generally award property acquired by one spouse by gift and inheritance during the marriage ... to that spouse ... unless (1) the other spouse has by his or her efforts or expense contributed to the enhancement, maintenance, or protection of that property, thereby acquiring an equitable interest in it, or (2) the prop-

erty has been consumed or its identity lost through commingling or exchanges or where the acquiring spouse has made a gift of an interest therein to the other spouse.

(Citations omitted.) This case does not support Sheila's contention. *Mortensen* does not address the validity or enforceability of contracts between spouses. If anything, a contract to convey property (assuming the contract is otherwise valid and enforceable) is analogous to a gift of property—a factor *Mortensen* specifically acknowledges as justification for a decree enforcing the transfer.

5. We reserve the question of whether a trial court may intentionally exercise its discretion in a divorce case to apportion property in conformance with a clearly invalid or unenforceable contract. That issue is not presented in this case.

conducted in good faith, as described in *In re Beesley,* and do not unreasonably constrain the court's equitable and statutory duties.

¶ 26 Although there was evidence that Thomas exerted some degree of pressure by repeatedly requesting that Sheila sign the contract and by telling her that her signature would demonstrate her willingness to trust him and forgive him for past failings, these actions did not by themselves demonstrate a clear lack of "good faith, honesty, and candor." *See In re Beesley,* 883 P.2d at 1346. Sheila presented no evidence that Thomas concealed any material facts from her, nor has she shown that she was unaware of the substance of what she was giving or receiving from the contract.

¶ 27 Sheila nevertheless contends that the particular consideration stated in the agreement was insufficient for the value of the property interest transferred. Ordinarily, courts will not inquire into the adequacy of consideration unless it is so insufficient or illusory as to render enforcement of the contract unconscionable. *See Resource Management Co. v. Weston Ranch,* 706 P.2d 1028, 1041–49 (Utah 1985); 17A Am.Jur.2d *Contracts* § 135 (1991). Although Sheila now claims the value of Thomas' contributions did not equal the value she relinquished, it is undisputed that the work Thomas performed had at least some value. Moreover, the obligations he fulfilled at the time of the contract were in many senses unique to the relationship of the parties and likely cannot be adequately reduced to a simple numerical dollar value. *See* 17A Am. Jur.2d *Contracts* § 127.

¶ 28 Sheila further argues that Thomas did not perform all the work he agreed to do. The agreement primarily re-fers to a number of general contributions to the relationship. To the extent it specifies particular tasks, it refers to an illustrative list of jobs Thomas had apparently performed and noted, "Tom is continuing these efforts; and is also facilitating and sharing in the financing and repairs ... to ensure [that the home] is painted, and a new roof is put on as soon as possible." Thomas proffered evidence at trial relating to all of the listed categories, including painting that had been done on the interior of the house and on the porch. The only substantially uncontested evidence regarding a distinct failure to perform was Sheila's contention that Thomas had agreed to paint the entire exterior of the house and he had failed to do so. Even assuming the agreement is incomplete or ambiguous on its face, the evidence was in conflict as to whether Thomas had actually contracted to paint the whole house or whether doing so constituted a material element of the consideration. The trial court thus possessed an evidentiary basis for finding that Thomas had materially fulfilled his part of the bargain.[6]

¶ 29 Finally, Sheila maintains that the agreement is void in its entirety because it contains other provisions that are unenforceable as against public policy. For instance, Sheila agreed that "in the event of a separation or divorce from my husband, THOMAS E. REESE, I will accept his 25 percent (%) ownership of the above said property, or a reasonable portion thereof, as settlement in full for child support and alimony." Sheila argues that this provision is void as against public policy. We do not need to address this argument because the child support and alimony provision is distinct and severable from the remainder of the contract.[7] *See Management Servs. Corp. v. De-*

---

6. The court's decision to award a lien to Thomas was not as one-sided as Sheila contends. At trial, Thomas asserted that he was entitled to an additional equitable setoff for many of the tasks he had performed (effectively double-counting several thousand dollars' worth of itemized costs that served as consideration for the one-quarter interest). The trial court unequivocally rejected Thomas' attempt to claim any additional equitable setoffs for work performed or for several checks he had purportedly given Sheila to obtain equity above and beyond the one-quarter interest she had conveyed.

7. Thomas has not requested performance of this provision (which, in any event, would require him to return his one-quarter interest to Sheila), and the trial court did not enforce it. The trial court awarded child support according to statutory guidelines and refused to award alimony in view of its own finding that both Thomas and Sheila were capable of meeting their own reasonable expenses.

*velopment Assocs.*, 617 P.2d 406, 408 (Utah 1980). Where the conveyance of the one-quarter interest in exchange for Thomas' contributions constituted a separate agreement supported by separate consideration, the inclusion of other, purportedly illegal, provisions within the same agreement could not invalidate that exchange.[8] In sum, the court of appeals did not err in affirming the trial court's ruling that the agreement was enforceable as a valid contract between spouses.

¶ 30 Although the court of appeals affirmed the trial court's substantive decision on disposition of the Herbert Avenue property, it sua sponte modified the court's decree as to the date Thomas' lien would come due. Thomas cross-petitioned this ruling.

¶ 31 The trial court held that Sheila was obligated to satisfy a lien in the amount of $26,224 as of the date the divorce decree became final. The court of appeals held that the trial court had failed to consider the equitable question of Sheila's ability to satisfy this lien. The court of appeals then substituted its own equitable ruling by delaying the payment of the lien until after the Reeses' daughter reached the age of majority.

¶ 32 As a basis for its ruling, the court of appeals expressed concern about Sheila's ability to adequately devote child support funds to her daughter if she was required to mortgage her property or otherwise obtain a loan for such a significant amount of money. While we agree that the trial court made insufficient findings on the issue of the timing for satisfaction of the lien, the court of appeals may not simply substitute its judgment for that of the trial court on equitable matters. *See Willey v. Willey*, 951 P.2d 226, 233–34 (Utah 1997). The court of appeals' ruling was based on its own assumptions about the financial abilities of the parties. The trial court clearly is in a better position to conduct such calculations, and the court of appeals should have remanded the matter to the trial court for reconsideration of, and entry of proper findings on, the question of Sheila's ability to pay the lien without unjust-

ifiably encumbering her obligations to her child. On this issue, we therefore reverse the court of appeals, with instructions that the question be remanded to the trial court for proper findings and a revised ruling if new findings necessitate one.

### III. ALIMONY

¶ 33 Sheila also asserts the trial court abused its discretion in refusing to award her alimony. She specifically complains that the trial court's comparison of incomes failed to consider her expenses for health care and for purchasing a new automobile when she is no longer able to use her older one. The arguments relating to this issue were not addressed by the court of appeals. We remand this issue to the court of appeals for proper consideration.

### IV. ATTORNEY FEES

¶ 34 Finally, Sheila argues that the trial court abused its discretion in refusing to award her attorney fees. Thomas argues that this court should award his fees for being required to respond to Sheila's petition for certiorari.

¶ 35 The court of appeals did not address Sheila's argument. We remand this issue to the court of appeals for proper consideration. Thomas argues that he is entitled to an award for attorney fees for the cost of defending against Sheila's petition for certiorari because, he alleges, her petition is frivolous. Although Sheila mistakenly treated her petition as a direct appeal, her misapprehension was in part occasioned by the court of appeals' sparse treatment of her original appeal. Our review indicates that Sheila's petition was not frivolous. Thomas is not entitled to attorney fees incurred in responding to Sheila's arguments before this court.

### CONCLUSION

¶ 36 We affirm the court of appeals insofar as it properly addressed the issues presented to it on appeal. We reverse, however,

---

8. Sheila also complains that another provision of the agreement violates the probate code, but that provision is likewise severable and distinct from the agreement to transfer the one-quarter interest in the home.

the court of appeals' sua sponte substitution of its own equitable judgment regarding the timing of the satisfaction of Thomas' lien. Although the court of appeals correctly determined that the trial court had made inadequate findings to support the immediate satisfaction of the lien, the proper course was to remand to the trial court for proper findings. With respect to the balance of the issues the court of appeals failed to address, we remand for proper treatment as heretofore outlined.

¶ 37   Chief Justice HOWE, Associate Chief Justice DURHAM, Justice STEWART, and Justice ZIMMERMAN concur in Justice RUSSON's opinion.

